**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael GREER, Defendant-Appellant.**

No. 86–4153.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1986.

Glen D. Vamvoras, Lake Charles, La. (Court-appointed), for defendant-appellant.

Peter Sprung, Sara Criscitelli, William S. Lynch, Sr., Washington, D.C., Larry J. Regan, Lake Charles, La., for plaintiff-appellee.

Before CLARK, Chief Judge, WISDOM, HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The background to this prosecution for racketeering, extortion, and obstruction of justice is set forth in *United States v. Carlock*, 806 F.2d 535 (5th Cir. Dec. 9, 1986). We add only those facts necessary to this appeal.

Michael Greer, a member of Local 406 of the International Union of Operating Engineers, was often appointed by Willard S. Carlock, Sr., the business agent of the Lake Charles district office of Local 406, to be an assistant master, and at times master, mechanic on job sites. As an assistant master mechanic, Greer served as an assistant foreman and wielded power over the workers.

Greer was named in the Carlock indictment but his case was severed when his counsel became ill during trial in Monroe, Louisiana.[1] Greer was later tried before a jury under a superseding indictment in Lake Charles.

The superseding indictment charged in Count 1 that Greer conspired with Willard S. Carlock, Sr., and others to conduct and participate, directly and indirectly, in the affairs of Local 406 through a pattern of racketeering activity. According to this count, Greer used his positions of authority to extort, or attempt to extort, kickbacks from operating engineers and sexual favors from female operating engineers on behalf of Carlock, Sr., and to attempt to obstruct and impede justice by counseling witnesses to lie to a federal grand jury. Count 2 charged Greer with a substantive racketeering violation based upon the acts alleged in Count 1.

Count 3 charged Greer with conspiring with Carlock, Sr., Columbus J. Laird, and others to obstruct justice in violation of 18 U.S.C. § 1503. This count alleged that the confederates counseled grand jury witnesses to lie to the grand jury about their kickback scheme. Specifically, Greer was charged with having counseled Houston Byrd, Jr., Nathan Courville, and Jerry Wade French to falsely deny the kickbacks. Counts 4–6 charged Greer with specific acts of obstruction of justice.

At trial, Greer was convicted of racketeering conspiracy in violation of 18 U.S.C. § 1962(d); of participating in the conduct of an enterprise's affairs through racke-

teering, in violation of 18 U.S.C. § 1962(c); of conspiracy to influence, obstruct, and impede justice; and three counts of influencing, obstructing, and impeding justice. He appeals and we affirm his conviction on all counts.

I

Greer argues that the cumulative effect of trial court errors denied him a fair and impartial trial. He contends that the trial court abused its discretion in refusing to sequester the jury despite the possibility that the jury was contaminated by jurors' spouses and friends present in the courtroom during the trial. He also argues that the trial court erred in excluding a prior recorded statement of a government witness pursuant to the attorney-client privilege and Federal Rules of Criminal Procedure Rule 16(d)(2), and that the trial court improperly interfered with Greer's ability to examine a defense witness by excluding and striking testimony and by instructing the witness as to his obligations under the oath. Finally, Greer adopts by reference arguments made on behalf of Willard Carlock, Sr., in *United States v. Carlock*, specifically adopting those regarding prejudicial pre-trial delay and alleged improprieties of the Senate Subcommittee which urged the Government to seek indictments. We address each contention in turn.

A

■ Sequestration is "an extreme measure, 'one of the most burdensome tools of the many available to assure a fair trial.' " *United States v. De Peri*, 778 F.2d 963, 973 (3d Cir.1985) (quoting *United States v. Porcaro*, 648 F.2d 753, 755 (1st Cir.1981)), *cert. denied* — U.S. ——, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). The decision to sequester a jury is entrusted to the sound discretion of the trial judge. *United States v. Phillips*, 664 F.2d 971, 997 (5th Cir.1981). A defendant, complaining of a refusal to sequester, must demonstrate a

---

**1.** The joint trial originally began in Lake Charles, but mistrial was declared when the court failed to obtain an impartial jury. The

trial was then transferred to Monroe, where the jury was sequestered during trial.

substantial likelihood of prejudice flowing from the refusal to sequester to warrant a new trial. *Id.*

Greer argues that the court erred when it refused to sequester the jury after learning that a juror's husband had been expressing his views on the trial to other trial spectators. After one and one-half days of testimony, government counsel informed the court that this man had been expressing to others his view that "from what I have seen, the Government doesn't have anything on Mr. Greer." Both sides moved to sequester the jury, although the defense objected to the government's alternative request that the juror be removed.

After separate interviews of the juror and her husband, the court was convinced that the two had not discussed the case and would not do so. The court did not tell the juror what her husband had said. It told her that her husband had been discussing his views of the case, that the two were not to discuss the case, and that the court was concerned that the defendant's rights be protected. The court then denied both motions before it.

▮ Greer suggests that the court should have addressed the jurors as a group, avoiding identification of the wife. He contends that the wife would naturally assume that her husband thought the defendant was guilty, since the court told her that it was concerned about the protection of the defendant's rights. This reading of the cold record is not implausible and has given us pause, but we are finally persuaded that there was no reversible error. We are aided in our effort to gauge the impact of the court's handling of the situation by the fact that Greer objected to the juror's removal. That is, Greer's counsel, a witness to the whole episode, did not think that the juror was tainted. Nor can Greer now suggest error because the court refused to remove the juror. *Cf. United States v. Kelly,* 722 F.2d 873, 881 (1st Cir.1983) (failure to ask for juror's dismissal constitutes waiver of objection to his continuing), *cert. denied,* 465 U.S. 1070, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984). In

any event, sequestration, the remedy sought below by Greer, would not have solved the suggested problem, as the juror would have remained free to "speculate" about her husband's views.

We are satisfied that the court's interviews and repeated admonitions protected the interests of the defendant. The trial judge must be given considerable latitude to respond to the infinite troubles of trial. With this due deference in mind, we conclude that there was no error.

Greer also asks us to assume that the jurors spoke to their friends and relatives about the case despite the court's repeated instructions not to do so. Greer admits, however, that he can only speculate as to what might have been said, if anything, and "cannot show actual prejudice as a result of the sequestration refusal." Such speculation takes us nowhere and certainly not to a reversal. *See United States v. Diggs,* 649 F.2d 731, 737–38 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981).

Finally, Greer alleges that sequestration was necessary to safeguard the jury from comments made by witnesses or other spectators. However, Greer does not allege that such statements continued after the incident or that any jurors were exposed to any statements.

**B**

Greer also contends that the trial court erred when it excluded a tape recording offered by Greer to impeach government witness C.J. Laird, on the grounds that Greer failed to comply with Federal Rules of Criminal Procedure Rule 16 and that the tape enjoyed an attorney-client privilege. We are persuaded, however, that no reversible error occurred.

▮ Laird and his attorney taped this statement in preparation for plea bargaining. In the statement, Laird denied meeting with Greer, Byrd, and Courville in Basile to prepare Byrd and Courville to lie before the Lafayette grand jury, stating that to the extent Byrd said otherwise,

Byrd was lying. The taped statement was in direct conflict with his trial testimony that the four men met in Basile to rehearse false testimony to be given before that grand jury. Laird, however, later admitted on cross-examination that he made the previous inconsistent statement. Because the tape was properly excludable for this reason, we do not then reach the questions of whether the tape was in fact excludable because it was privileged or because Greer's counsel failed to comply with Rule 16. Fed.R.Evid. Rule 613(b); *see also United States v. Roger*, 465 F.2d 996, 997–98 (5th Cir.) (when prior inconsistent statement has been admitted, extrinsic proof of the statement is excludable), *cert. denied,* 409 U.S. 1047, 93 S.Ct. 517, 34 L.Ed.2d 498 (1972).

Finally, Greer argues that he was told by the court that he could question Laird about the taped statements, but his attempts to do so were thwarted by sustained objections, denying effective cross-examination. The argument is so bereft of merit that we will not detail the exchanges. The objections were properly sustained.

### C

Greer next argues that the court undermined the credibility of defense witness Bill Smith by reminding Smith of his oath and by repeatedly sustaining objections on his direct examination. These arguments are without merit.

■ First, Greer contends that the trial court committed reversible error when it admonished Smith about his oath. Because counsel for Greer failed to object to the court's admonition at trial, we review under the plain error doctrine. *United States v. Carpenter*, 776 F.2d 1291, 1295 (5th Cir. 1985). After Smith testified as to Greer's reputation for truthfulness, the prosecution asked Smith how many people he had talked to about that subject. Smith testified that he did not know how many. When the prosecution persisted with this line of questioning, Smith asked if the prosecution wanted the truth. The court then reminded Smith that his oath required the

truth, and instructed Smith to testify accordingly.

Contrary to Greer's contention, the trial court's response was limited and appropriate. While reminding the witness about his duty under the oath, the court stated, "I know you didn't mean it." The district judge, as overseer of the trial, has the duty to ensure that all witnesses understand the importance of their appearance and adhere to the oath of truthfulness. We find no error.

Second, Greer claims that the court undermined the credibility of Smith's testimony by sustaining a number of objections by the prosecution. We reject this argument because the court properly sustained the objections. Greer called Smith not only as a character witness, but also to testify about a meeting at which Houston Byrd, Jr., Greer and Smith discussed Byrd's upcoming appearance before the federal grand jury in Lafayette. Greer wanted Smith to testify to what Greer and Byrd said at this meeting, and to testify that Byrd stated that Greer had previously instructed him to tell the truth before the grand jury. When requested by the trial court to state the purpose of the proffered testimony, Greer's counsel responded that the testimony was to be used to impeach Byrd. But Byrd was never confronted with his prior inconsistent statements, and thus extrinsic evidence of the statements could not be used to impeach him. Fed.R. Evid. Rule 613(b). Moreover, the trial court properly rejected Greer's contention that Smith's testimony regarding Byrd's and Greer's conversation was not hearsay because it recounted the statements of co-conspirators. *See* Fed.R.Evid. 801(d)(2)(E). The statements were not made in furtherance of the conspiracy.

Greer also attempted to elicit testimony from Smith that Laird told Smith that he had never been to Basile to meet Byrd, Greer, and Courville. Laird testified at trial that the four men discussed the false testimony to be given by Byrd and Courville before the grand jury at this meeting. On cross-examination, Laird admitted that

he previously maintained that this meeting never occurred. Hence, there was no error in rejecting extrinsic evidence of his prior inconsistent statement.

Finally, the trial court properly struck non-responsive testimony by Smith during direct examination. While testifying about Laird's and Byrd's reputations for truthfulness, Smith interjected editorial and inappropriate comments.

### D

Greer has adopted the arguments made on behalf of Carlock, Sr., in *Carlock,* 806 F.2d 535, expressly those regarding pre-trial delay and alleged Senate improprieties. *See United States v. Ballard,* 779 F.2d 287 (5th Cir.), *cert. denied* —— U.S. ——, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). In *Carlock,* we found the claims he adopts to be without merit.

### II

The conviction of Michael Greer is AFFIRMED.