UNITED STATES

v.

**Senior Airman Richard G. BUTTON, FR 585–90–2148, United States Air Force.**

**ACM 27290.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 Sept. 1988.

Decided 14 Nov. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

1. His pleas were by exception and substitution to a good portion of the specific acts alleged.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor and Major Carole W. Hanson.

Before BLOMMERS, KASTL, MURDOCK and MILLS, Appellate Military Judges.

## DECISION

BLOMMERS, Senior Judge:

Electing trial by a military judge sitting alone, the appellant, pursuant to his pleas, was found guilty of committing indecent acts upon the body of his stepdaughter, SW, on diverse occasions over an 18–month period of time,[1] and, subsequent to the alleged sexual abuse coming to light, of violating an order from his commander not to go to his family's on base quarters where the victim resided, offenses in violation of Articles 90 and 134, UCMJ, 10 U.S.C. §§ 890, 934. Contrary to his pleas, he was also found guilty of sodomizing the child on diverse occasions over the same 18–month period in violation of Article 125, UCMJ, 10 U.S.C. § 925. His sentence, as adjudged and approved, consists of a bad conduct discharge, confinement for four years and eight months, forfeiture of $200.00 pay per month for 12 months, and reduction to airman basic (E–1). Before us the following four errors have been assigned:

### I

WHETHER THE TESTIMONY OF SSGT ROBERT GRINDER WAS IM-PROPER AGGRAVATION TESTIMO-NY BEYOND THE SCOPE OF R.C.M. 1001(b)(4) AND ACTED TO UNREA-SONABLY PREJUDICE APPELLANT.

### II

WHETHER THE ORDER GIVEN TO APPELLANT BY HIS SQUADRON SECTION COMMANDER NOT TO GO TO HIS FAMILY'S RESIDENCE WAS A LAWFUL ORDER.

However, except for two words, the military judge found him guilty as charged.

## III

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING GOVERNMENT WITNESSES TO TESTIFY TO THE INCONSISTENT STATEMENTS OF THE VICTIM IN ACCORDANCE WITH M.R.E. 613.

## IV

WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS A CONFESSION MADE TO THE OSI.

Our initial research did not reveal any military precedent addressing the Military Rule of Evidence 613 issue under similar circumstances. We found some federal cases which caused us concern regarding the admissibility of the testimony in question. We therefore specified additional issues and asked for briefs pertaining to them.[2] We are now ready to render a decision in this case. The issues will be addressed in the order raised by counsel. The facts will be developed as they relate to each issue.

## I

The alleged sexual abuse came to light on 15 March 1988. The appellant was given an order by his squadron section commander not to go to his on base quarters where the victim resided. Thereafter, on 26 April 1988, he went to said quarters. As noted above, he pleaded guilty to this offense at trial.

After findings were returned, the prosecution called Staff Sergeant (SSgt) Grinder to testify in its presentencing case. Grinder testified that he was on duty as a security policeman on the evening of 2 September 1988. He responded to a call indicating that the appellant had again gone to the quarters.[3] As Grinder approached the quarters he observed the appellant inside, together with his wife and his stepdaughter (the victim). He related that the stepdaughter was looking out of an upstairs window at that point, and appeared frightened. The appellant was apprehended shortly thereafter without resistance. Although trial defense counsel interposed objections to a few of the specific questions asked of this witness (e.g., that would call for a hearsay response), he made no objection to the general nature of Grinder's testimony about this uncharged incident.

The appellant now claims that the only basis for admission of such testimony at that point in the proceedings was R.C.M. 1001(b)(4), which permits presentation of evidence "as to any aggravating circumstances directly relating to or resulting from *the offenses of which the accused has been found guilty.*" We agree.

 Initially, we note that no objection was interposed at trial to the general subject matter of SSgt Grinder's testimony, *i.e.,* that the appellant had again violated his commander's order. The claim of error has been waived, absent plain error. R.C.M. 905(e); Mil. R. Evid. 103(a) and (d). We do not find plain error present in this case. *See, e.g., United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *United States v. Sanford,* 29 M.J. 413 (C.M.A.1990); *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A. 1986); *United States v. Rutherford,* 29 M.J. 1030 (A.C.M.R.1990). This testimony certainly did not rise to the level of that

2. Specified issues renumbered herein as IIIA, IIIB, and IIIC:

### IIIA

WHETHER THE TESTIMONY OF SA REEVES AND MS SNIDER–MYER RELATING TO WHAT THE VICTIM TOLD THEM WAS ADMISSIBLE IN LIGHT OF THE FACT THAT THE VICTIM ACKNOWLEDGED THE MAKING AND CONTENT OF PRIOR INCONSISTENT STATEMENTS.

### IIIB

IF SUCH TESTIMONY WAS ADMISSIBLE, FOR WHAT PURPOSE COULD IT BE CONSIDERED BY THE MILITARY JUDGE AS THE FINDER OF FACT IN THIS CASE?

### IIIC

IF THE MILITARY JUDGE CONSIDERED THIS EVIDENCE FOR AN IMPROPER PURPOSE, WHAT REMEDY SHOULD BE FORMULATED BY THIS COURT?

3. The order prohibiting him from doing so was apparently still in effect. The appellant's trial was held 1–3 September 1988. This incident was, of course, not part of the offense charged.

presented in a recent Navy case where the Court found such specific acts testimony so egregious that the military judge had a *sua sponte* duty to intervene. *United States v. Trimble,* 30 M.J. 1133 (N.M.C.M.R.1990).

■ Even if waiver were not applied, the appellant would still not be entitled to relief. Under the circumstances present, we view the appellant's continued thwarting of his commander's order as proper evidence in aggravation under R.C.M. 1001(b)(4). *See United States v. Mullens,* 29 M.J. 398 (C.M.A.1990); *United States v. Ciulla,* 29 M.J. 868 (A.F.C.M.R.1989) and cases cited. We reach this conclusion only because of our resolution of Issue II below. As to all three of the remaining assertions of error, our attention has been invited to a post-trial Article 38(c), UCMJ, 10 U.S.C. § 838(c), brief submitted by trial defense counsel to the convening authority.

## II

Through a stipulation of expected testimony, the squadron section commander indicated that the order given the appellant was as follows: "One, SrA Button will stay away from family quarters; and two, that he shall have no contact with [SW] at all." The order was issued on 15 March 1988, the day the commander learned of the allegations. In early April the same order was reissued after it was ascertained that the appellant was continuing to visit the family quarters.

Entering a timely motion to dismiss the charge alleging the failure to obey this order, trial defense counsel attacked its legality, arguing that its *duration* and *breadth* made the order illegal. Thus, it was urged, the order was overly broad, vague and indefinite, citing *United States v. Wysong,* 9 U.S.C.M.A. 299, 26 C.M.R. 29 (1958) (order to remain away from all men in the company concerned with the investigation involving the accused) and *United States v. Milldebrandt,* 8 U.S.C.M.A. 635, 25 C.M.R. 139 (1958) (order to report at-

tempts to clear personal indebtedness while on leave). The appellant's wife and four children, including SW, lived in the quarters. He was the sole source of economic support for the family.

Trial counsel defended the order, arguing that:

a commander may lawfully regulate all activities which are reasonably necessary to safeguard and protect the morale, discipline and usefulness of the members of a command and are directly connected with the maintenance of good order in the service. *United States v. Green,* 22 M.J. 711 (A.C.M.R.1986). The order can concern activities affecting health, safety, and personal welfare of the military community. *Green* at 715.

■ In denying the motion, the military judge entered well-articulated findings of fact and conclusions of law. We adopt them as our own.[4] Article 66(c), UCMJ, 10 U.S.C. § 866(c). In pertinent part, they are as follows:

The court further finds that the order was given for the protection of [SW], the alleged victim, as well as for the family of the accused;

That B, the order served not only to protect the accused's family, but in doing so it also serves to protect the good order and discipline of Misawa Air Base, Japan. In this regard, the order served to afford a safe haven for [SW], a girl of twelve years of age living at a military installation in a foreign country, that being Japan, immediately following the report of serious criminal allegations to authorities. It's within the common knowledge that investigations of this nature take some time to sort out....

C, the order did not prevent the accused from communicating with, seeing, and interacting with the remainder of his family at locations away from the home, the remainder being other than [SW].

D, considering the circumstances, the court finds that the order served as a

---

**4.** We do not consider the appellant's plea of guilty to this offense after the motion to dismiss was denied as having waived the issue, since the question raised goes to the lawfulness of the

order, not the factual issue of his guilt of the offense charged. R.C.M. 910(a)(2) and (j). *See also Navy–Marine Corps Court of Military Review v. Carlucci,* 26 M.J. 328, 335 (C.M.A.1988).

minimal restraint on the accused and was far less onerous on the accused than other available measures, which could included [sic] an order of pretrial confinement. . . .

E, the court finds that although the duration of the order was not specified, the order was not ambiguous or overly broad. The commander, in early April, had repeated the order, just emphasizing to the accused it was still in effect. It was found earlier that the period from the earliest issuance of the order to the alleged violation of the order was not so lengthy as to make the order burdensome, broad, vague, or ambiguous.

Accordingly, the court finds that there was a valid military purpose for the order; that the order was clear, that it was within Lieutenant Steffey's authority as a commander and was not an unlawful order.

We could not have summed up the matter at issue any better. The military judge's ruling was correct. *Unger v. Ziemniak*, 27 M.J. 349 (C.M.A.1989); *United States v. Burris*, 21 M.J. 140 (C.M.A.1985); *United States v. Blanchard*, 19 M.J. 196 (C.M.A. 1985); *United States v. Wine*, 28 M.J. 688 (A.F.C.M.R.1989); *United States v. Smith*, 25 M.J. 545 (N.M.C.M.R.1987); MCM, Part IV, para. 14c(2).

### III

Military Rule of Evidence 613(b) provides:

(b) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Mil.R.Evid. 801(d)(2).

This is taken from the Federal rule without change. *See* MCM, App. 22, Rule 613(b) at A22–44 (1984).

### A

The day after the alleged sexual abuse of SW came to light, SW was interviewed by Ms. Snider–Myer, a social worker employed with the Misawa AB Family Advocacy Outreach Program. During that initial "assessment" interview and over several supportive psychotherapy sessions that followed, SW said that her stepfather had sexually abused her in all of the various ways subsequently incorporated into the court-martial charges. SW was also interviewed by Special Agent (SA) Reeves of the Air Force Office of Special Investigations. She related similar information to him. During sworn testimony at the Article 32, UCMJ, investigation she told the same story.

At trial, her testimony amounted to a total recantation. She fully acknowledged her previous statements and testimony to the contrary as outlined above. After eliciting testimony that she had not been pressured by anyone to change her story, trial defense counsel asked SW why she was changing her testimony. She replied: "Because I feel terrible, because of what I said that he did, and he didn't really do it." After being advised by the military judge that the appellant had pleaded guilty to committing certain sexually indecent acts upon her, she still denied that any untoward touchings had occurred.

■ With its case postured in this light, the prosecution offered a verbatim transcript of SW's Article 32 testimony. There was no defense objection. That document was properly admitted as substantive evidence. Mil.R.Evid. 801(d)(1)(A). *See also United States v. Luke*, 13 M.J. 958, 960 (A.F.C.M.R.1982); Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual* at 613 (2d Ed.1986).

SA Reeves was then called as a prosecution witness. Initially, his testimony concerned interviews with and written statements made by the appellant. Trial counsel then asked him if he had been present during an interview with SW and whether she provided information about the sexual abuse different from that provided by the appellant. SA Reeves stated that she had,

and as he began to relate what SW had said, defense counsel interposed a hearsay objection. Trial counsel countered by citing Rule 613.[5] He also stated:

> Furthermore, Your Honor, we would offer this as it not being hearsay, in that it's for a non-assertive purpose. We're not offering it for the purpose of showing the penis actually went into the mouth, but rather that she said it did, which tends to show that the statement is inconsistent with what she testified to here today.

In other words, trial counsel offered this evidence for the purpose of impeaching SW's in-court testimony that the acts of sexual abuse did not occur, not for the purpose of using the prior inconsistent statements as substantive evidence—to prove the truth of the matters asserted. The defense further argued that Reeves' testimony would be cumulative. The military judge ruled that the prosecution had established through SW's testimony the necessary predicate under Rule 613(b) for admission of extrinsic evidence of her prior inconsistent statements. As to cumulativeness, the judge felt "it would be of a minor cumulative nature," and stated further: "How many times it's repeated isn't going to affect the court." SA Reeves then proceeded to testify as to what SW had told them about being sexually abused by the appellant.

The prosecution then called Ms. Snider-Myer. The defense again interposed a hearsay objection, and trial counsel again cited Rule 613(b).[6] The trial judge overruled the objection on that basis, and Ms. Snider-Myer recounted what the child had told her about the alleged sexual abuse.

### B

Generally, Rule 613 is regarded as a vehicle for the introduction of impeachment evidence, not substantive evidence for which prior statements by a witness would qualify if they met the requirements of Rule 801(d)(1). Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual*, 566–567 (2d Ed.1986). *See also United States v. Connor*, 27 M.J. 378, 388 (C.M.A.1989); *United States v. Jackson*, 12 M.J. 163, 165 (C.M.A.1981); *United States v. Dodson*, 16 M.J. 921, 927–928 (N.M.C.M. R.1983). However, there is a line of Federal cases holding that unsworn, out-of-court statements inconsistent with a witness' in-court testimony should not be admitted even for impeachment purposes if the witness acknowledges the prior statement and its inconsistencies—the very situation we face. As summed up by the Tenth Circuit Court of Appeals:

> '[T]he testimony of a witness, after a proper foundation has been laid, may be impeached by showing former declarations, statements, or testimony which are contradictory or inconsistent with the answers given at a trial.' *United States v. Neal*, 452 F.2d 1085, 1086–87 (10th Cir. 1971), *quoting Brooks v. United States*, 309 F.2d 580, 582 (10th Cir.1962). However, 'where it is sought to impeach a witness by showing a prior inconsistent statement and the witness admits the prior inconsistent statement, the witness

---

**5.** It is clear from the record that a proper foundation for such extrinsic evidence had been laid. SW had been given the opportunity to explain or deny her prior statements and the defense had the opportunity for cross-examination. *See* Mil.R.Evid. 613(b) and Analysis thereof in MCM, App. 22 at A22–44 (1984).

**6.** Trial counsel affirmatively stated that the Government was not offering Ms. Snider-Myer's testimony under Mil.R.Evid. 803(4), the hearsay exception relating to statements made for purposes of medical diagnosis or treatment. From the record it is clear that an account of at least the initial interview between Ms. Snider-Myer and SW, during which SW discussed the alleged abuse in considerable detail, would not have qualified for admission under that hearsay exception. Some subsequent testimony by Ms. Snider-Myer about statements SW made regarding how she felt about the therapy sessions and her intention to recant were offered and admitted under Rule 803(4). That testimony does not bear directly on the issue we must resolve.

Whether the prior statements by SW to SA Reeves and Ms. Snider-Myer would have been admissible as substantive evidence under Mil.R. Evid. 803(24) was not litigated by the parties at trial. *See, e.g., United States v. Guaglione*, 27 M.J. 268 (C.M.A.1988); *United States v. Yeauger*, 27 M.J. 199 (C.M.A.1988); *United States v. Quick*, 26 M.J. 460 (C.M.A.1988); *United States v. Williamson*, 26 M.J. 115 (C.M.A.1988).

is thereby impeached and further testimony is not necessary.' *United States v. Jones*, 578 F.2d 1332, 1340 (10th Cir.), *cert. denied sub nom. Janko v. United States*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978). Where the witness does not deny making a prior inconsistent statement, 'there is clearly no rationale for the introduction of a prior "inconsistent" statement....' *United States v. Balliviero*, 708 F.2d 934, 939–40 (5th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 351, 78 L.Ed.2d 316 (1983).

*United States v. Soundingsides*, 820 F.2d 1232, 1240 (10th Cir.1987). *See also United States v. Greer*, 806 F.2d 556, 558–559 (5th Cir.1986) (specifically citing Rule 613(b)); *McCormick On Evidence*, Cleary Ed., Sec. 37 at 79 (3d Ed.1984). Despite a limiting instruction to the jury from the trial judge admonishing that evidence of the prior inconsistent statements in question could only be considered for impeachment purposes, the Court in *Soundingsides* was concerned that since the statements "were not properly needed or admitted for impeachment ... the effect of their admission was to put them before the jury for the truth of the information they contained." 820 F.2d at 1240.

As pointed out by appellate government counsel in their brief on the specified issues, other Federal precedent tends to indicate that whether extrinsic evidence of prior inconsistent statements can assist the trier of fact, even in the face of an acknowledgment of the prior statement by the declarant, is a matter within the sound discretion of the trial judge. *See United States v. Balliviero*, 708 F.2d 934 (5th Cir. 1983) (cited in *Soundingsides*); *United States v. Williams*, 668 F.2d 1064 (9th Cir. 1982); *United States v. Kenny*, 645 F.2d 1323 (9th Cir.1981); *United States v. Rice*, 550 F.2d 1364 (5th Cir.1977); *United States v. Rogers*, 549 F.2d 490 (8th Cir.1976). Government counsel also assert that the rule "should be read in its plain language." In other words, there is no exception set forth in the rule limiting the admissibility of extrinsic evidence of the prior state-

ments if the witness admits to making the prior statement.

As previously indicated, we have not found military precedent directly on point. We first note that the cases cited to us by appellate government counsel are in varying degrees distinguishable from the precise situation we face, which is more closely akin to the factual circumstances present in the *Soundingsides* and *Greer* cases. Secondly, as we previously noted, Mil.R. Evid. 613(b) is a carbon copy of the Federal rule. Since the military courts have not previously addressed this application of the rule, and the Federal courts have, "we are obliged to pay particular attention to the manner in which those courts have applied it." *United States v. Powell*, 22 M.J. 141, 143 (C.M.A.1986).

■ We find the reasoning of the Courts of Appeals in *Soundingsides* and *Greer* to be persuasive. We hold that extrinsic evidence of a prior inconsistent statement should not be admitted for impeachment when (1) the declarant is available and testifies; (2) the declarant admits making the prior statement; and (3) the declarant acknowledges the specific inconsistencies between the prior statement and his or her in-court testimony. At that point, the witness has been fully impeached with regard to the prior statement and further extrinsic evidence as to it is nothing but cumulative and may well be misleading to court members even in the face of a limiting instruction. *Soundingsides*, 820 F.2d at 1236. *See also* Mil.R.Evid. 401 & 403. Our holding is specifically limited to the admissibility of evidence under Rule 613(b). Such prior statements may be admissible as substantive evidence under Mil.R.Evid. 801(d)(1) or one of the various hearsay exceptions in Rule 803.

C

■ Applying our holding to the facts of this case, we conclude that the testimony of SA Reeves and Ms. Snider–Myer as to specific acts of sexual abuse related to them by SW should not have been received

in evidence.[7] However, under the circumstances present, we find no material prejudice to the appellant's substantial rights at this judge alone trial. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See also United States v. Davis*, 26 M.J. 445, 449–450 (C.M.A. 1988); *United States v. Murray*, 25 M.J. 445, 449 (C.M.A.1988).

First, based upon the record, we are confident that the military judge considered this evidence upon the ground it was offered, that is, as bearing upon the credibility of SW's in-court testimony, and not for the truth of the matters asserted therein, a concern of the Court in *Soundingsides*. Second, though not so offered at trial, it appears to us that the evidence may well have been admissible under Mil.R.Evid. 803(24), and thus could have been considered as substantive evidence. *United States v. Hines*, 23 M.J. 125 (C.M.A.1986); *United States v. Powell, supra. But see United States v. Guagliore*, 27 M.J. 268 (C.M.A.1988).[8] In this regard, we note that SW never really provided a plausible explanation in court as to why her out-of-court statements were false. *See United States v. Lockwood*, 23 M.J. 770 (A.F.C.M.R.1987). Third, the testimony of specific acts of sexual abuse by SA Reeves and Ms. Snider–Myer was only cumulative to SW's Article 32 testimony, which was properly received in evidence. In other words, there were no different acts of misconduct alleged so as to support the occurrence of the offenses charged; it was merely a recitation of information already before the court. *United States v. Nelson*, 21 M.J. 711 (A.F.C.M.R.1985). Finally, the testimony of Dr. Watson, an expert witness in the field of gynecology, was also before the court. He had examined SW and her medical records. His examination revealed the presence of herpes simplex number one in her genitals, a condition generally associated with cold sores around the mouth. Dr. Watson's review of the appellant's medical records revealed that the appellant had a history of cold sores in his mouth. It was Dr. Watson's expert opinion that SW's herpes was caused by some person with cold sores coming in contact with her "vestibular area." Upon the record as a whole, we are convinced that there is no reasonable probability that the evidence in question had any impact on the findings as returned by the trial judge. *Id.* at 713. Further, we find the error to be harmless beyond any reasonable doubt. *United States v. Arnold*, 25 M.J. 129 (C.M.A.1987).

## IV

The final matter raised relates to the two written statements the appellant provided to OSI. It was asserted at trial and now on appeal that the statements were not voluntary as required by Mil.R.Evid. 304. The primary basis of this claim is that the appellant had had little sleep for over two days and that he was utterly "exhausted" at the time he was interviewed. We agree completely with the detailed essential findings reached by the military judge, on the basis of which he denied a suppression motion as to those statements. The assertion of error has no merit. Mil.R.Evid. 304(c)(1). *See also United States v. Gillette*, 22 M.J. 840 (A.F.C.M.R.1986), *aff'd*, 25 M.J. 243 (C.M.A.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); *United States v. Tua*, 4 M.J. 761 (A.C.M.R.1977), *pet. denied*, 5 M.J. 91 (C.M.A.1978); *United States v. Copeland*, 21 C.M.R. 838, 863–864 (A.F.B.R.1956), *pet. denied*, 22 C.M.R. 331 (1956).

The findings of guilty and the sentence are correct in law and fact and, upon the basis of the entire record, are

AFFIRMED.

---

7. We recognize that a trial judge is given broad discretion in deciding whether to admit or exclude evidence. *United States v. Jenkins*, 27 M.J. 209, 211 (C.M.A.1988); *United States v. Jones*, 25 M.J. 567 (A.F.C.M.R.1987).

8. We make this point only as it bears on our assessment of the prejudicial impact of the error; we could not resolve this matter by independently considering the evidence as admissible under the residual hearsay exception. *United States v. LeMere*, 22 M.J. 61, 68 (C.M.A.1986).

Senior Judges KASTL and MURDOCK and Judge MILLS concur.

Senior Judge BLOMMERS authored this opinion prior to his reassignment.