# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 9, 2012

Lyle W. Cayce
Clerk

No. 10-10886

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CRISTOBAL MEZA, III,

Defendant - Appellant

Appeal from the United States District Court
Northern District of Texas

Before KING and HIGGINSON, Circuit Judges, and FOOTE, District Judge.[*]
HIGGINSON, Circuit Judge:

On July 14, 2009, three shotguns and a rifle were stolen from a pawn shop in Wichita Falls, Texas. The police determined that an individual named Chris Sanchez ("Sanchez") had committed the robbery and found one of the guns at his house. After his arrest, Sanchez told police where he had sold another of the guns, a Mossberg 12 gauge shotgun. Police searched the property of defendant–appellant Cristobal Meza, III ("Meza"), a convicted felon, and found the shotgun in a shed. They then searched Meza's house and found two boxes of ammunition (12 gauge Winchester shotgun shells). Each box could hold a

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

No. 10-10886

maximum of fifteen shells. One box was full; the other had only seven shells, with eight removed and placed in the shotgun. Meza was arrested a few blocks away from the residence.

On August 18, 2009, Meza was charged in a two-count indictment. Count 1 charged Meza with being a felon in possession of a firearm and Count 2 charged Meza with being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Meza reached a plea agreement with the government, whereby he agreed to plead guilty to Count 1 in exchange for dismissal of Count 2, thereby capping his maximum sentence at 120 months. The magistrate judge recommended that the district court accept this plea agreement, and the district court initially agreed to do so. Meza's initial Presentence Investigation Report ("PSR") calculated his guideline range at 168-210 months, but because Meza used cocaine while he was released on bond, his guideline range rose to 235-293 months. Because this guideline range was more than the 120 month sentence contemplated under the plea agreement, the district court found that the agreement "undermine[d] the sentencing guidelines and statutory purposes of sentencing," and rejected the plea agreement. The case proceeded to trial.

The district court held a one day trial on April 12, 2010. The government called five witnesses, consisting of four law enforcement officers and Sanchez. The government began by calling Detective Gerald Schulte of the Wichita Falls Police Department. Schulte testified that he investigated the pawn shop break-in, and that Sanchez's tip led the police to search Meza's house. Schulte also testified that, prior to execution of the search warrant, the police conducted surveillance of the property, and observed Meza leaving the house. Schulte testified that the shotgun was found in a shed on top of a washing machine and that ammunition was found inside the house. On cross-examination, Schulte

2

No. 10-10886

explained that the police verified that Meza owned the property after they found his name on the property's water bills.

The government then called Sanchez to the stand. A week before trial, Sanchez had told investigating agents that he had sold one of the stolen guns to Meza. At trial, Sanchez admitted that he had stolen the guns from the pawn shop, and had hidden one of the guns at Meza's house, a so-called "trap house." Sanchez then, however, recanted his earlier statements to investigators:

> Q. So when you were arrested for the pawn shop break-in, did you talk to some police officers?
> A. Yes, ma'am.
> Q. And did you tell them what you did with the guns?
> A. Yes, ma'am. I lied and said I sold them to this man [Meza].
> Q. So you lied?
> A. Yes, ma'am.
> Q. And what about when you talked to Agent Benavides last week? What about that?
> A. I lied again.
> Q. Why did you lie?
> A. Because I was scared. I already told them I sold them to this man, and I never sold them to this man. This man didn't have nothing to do with it.
> Q. Why did you say you sold them to him?
> A. Because I was scared. I didn't know. I didn't know what to do.

Sanchez continued:

> Q. Did you know that they found one of the guns you stole in his – at his house?
> A. That's the trap house. Everybody goes in there. That's where I had my guns hidden. I don't even know if they know that they were there or not. That's where everybody goes and chills.
> Q. So you're saying he doesn't live there?
> A. I don't – everybody lives there. If you need a place to go, that's where you go.
> Q. So when you told police officers that you sold the gun to him and then did you – do you recall going in the car with the police officers and pointing out the house where Meza lived?
> A. Yeah, I lied. I knew where he lived before.
> Q. I'm sorry, say that again?

3

No. 10-10886

A. I knew where he lived.  I knew where –
Q. So you're saying he does live there?
A. Where everybody goes and stays.  I'm pretty sure he stayed there a couple of times, but – I don't know if he lives there, but I seen him there a lot of times, but I don't know if he lives there.  I can't say if the house is under his name or not.  I can't say if the house is under his name or if he resides under that residence.  I ain't going to sit here and lie and say he does because I don't know.
Q. Okay.  So you're saying that when you told the police officers back in July that you sold the gun to him and showed them where he lived – the gun was found there?
A. Yeah, I put it there.
Q. Oh, you put it there?
A. Yes, ma'am.
Q. Where did you put it in the house?
A. In the back room.
Q. In the back bedroom?
A. Yes, ma'am.
Q. Okay.  And then what about when you spoke to Agent Benavides this past week and you told him that you sold the gun to him?
A. I lied.  I know I made a mistake.  It's just I didn't want to dig myself into a deeper hole than what I'm already in.  I thought because of putting it off on somebody else, I would get away with it, but I didn't.
Q. But you didn't because you're doing time for stealing those guns?
A. Yes, ma'am.
Q. So you're saying if we found that gun in the back bedroom, you put it there?
A. Yes, ma'am.
Q. Okay.

On cross-examination, Sanchez stated that "[a] lot" of other people besides Meza had access to the house, including a man named Salvador Aleman.  Sanchez also tried to explain his prior inconsistent statements, stating: "I just didn't want to get myself into anymore trouble, so I'm just going to go ahead and tell the truth. I don't want to get this man into something that he didn't do, for him to be found guilty of something that he didn't commit."  On redirect examination, Sanchez

4

No. 10-10886

said that the gun was not loaded when he put it in the bedroom. Sanchez also denied that he was lying on the stand because he had been intimidated by Meza.

After Sanchez, the government called FBI Special Agent Fernando Benavides. Benavides testified about his interviews with Sanchez. According to Benavides, Sanchez stated that he was fearful of Meza, and did not want to give his name for the police reports. The government then sought to introduce an audio recording of Benavides's interrogation of Sanchez. Meza objected on hearsay grounds, and at first suggested that it could be offered as impeachment evidence with a proper limiting instruction. The government responded as follows:

> Mr. Sanchez's testimony was extremely relevant to certain elements, namely, Mr. Meza's knowing possession of the firearm, the fact that firearm was found at Fillmore street, which Sanchez knew to be Meza's residence.
>
> After the Government called him, he has changed his story and became, essentially, a hostile witness. So we are offering it, one, to impeach Mr. Sanchez's testimony; but two, the evidence is relevant regarding the essential elements.

After further discussion with the district court, the government argued that the statement was admissible under Federal Rule of Evidence 613(b) for impeachment purposes. When asked whether Rule 613(b) applied, defense counsel clarified:

> [I]f [the witness] den[ies] that statement—if he denied that he had made an inconsistent statement, then I think you're able to offer extrinsic evidence to prove that he has, in the past, made a prior inconsistent statement. Here, I don't think it applies to the extent that he admitted he made a prior inconsistent statement.

The district court overruled the hearsay objection, found the tape admissible under Rule 613(b), and stated that it would give the jury a cautionary instruction. Meza then objected on Rule 403 grounds. The district court also overruled this objection.

5

No. 10-10886

The district court then played for the jury the audio recording of Sanchez's conversation with Benavides. When it did so, it provided a limiting instruction, informing the jury that it could not consider the recording for the truth of the matters asserted, but only to consider Sanchez's credibility. The audio recording is approximately eight minutes in duration. On the recording, Benavides asked Sanchez about his sale of the stolen firearms. Sanchez at first stated that he did not remember to whom he had sold the firearms, and asked to see his earlier statement to police. When asked a second time, Sanchez said, "I sold one [firearm] to Chris Meza." When asked where the transaction occurred, Sanchez again said that he could not remember, but eventually stated, "I guess I went to his house," which he identified as being on Fillmore Street (Meza's street). Sanchez further stated that he had been to that house many times, and had seen drugs there, but not firearms. Sanchez stated that Meza paid him approximately $100 cash for the shotgun. When asked whether the shotgun had any ammunition in it, or whether he sold any ammunition to Meza, Sanchez responded in the negative. Sanchez also denied ever seeing any ammunition in the house. After the recording was played, Benavides confirmed that Sanchez's testimony at trial contradicted what he had previously told investigators.

The government then called two other witnesses: police officer Karl King and ATF Agent Brandon Chenault. King testified that, during the search of Meza's house, he found in a back bedroom closet two boxes of shotgun shells and a tin can containing paycheck stubs that belonged to Meza. He also testified that there was ample evidence to prove that Meza resided at the house. Chenault testified that the firearm and ammunition traveled in interstate commerce.

At the close of the government's case, Meza moved for an "instructed verdict." The district court denied the motion.

No. 10-10886

On August 30, 2010, Meza was sentenced to consecutive 120 month sentences on Counts 1 and 2, for an aggregate of 240 months. The district court also imposed a 3-year term of supervised release. Meza then appealed, but because the court reporter's notes from the sentencing hearing were corrupted and inaccessible, the district court requested that the case be remanded for resentencing. This court granted the remand request. At resentencing, the district court again imposed consecutive 120 month sentences, for a total of 240 months, with three years of supervised release. Meza timely appealed.

## I.    Sufficiency of evidence supporting Meza's convictions for being a felon in possession of a firearm and ammunition

### A.    Standard of Review

Where, as here, a sufficiency of the evidence objection has been preserved, this court will determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004). "When there is a conflict over testimony, the court will defer to the fact finder's resolution with respect to the weight and credibility of the evidence. To be sufficient, the evidence need not exclude every reasonable hypothesis of innocence, so long as the totality of the evidence permits a conclusion of guilt beyond a reasonable doubt." *United States v. Hicks*, 389 F.3d 514, 533 (5th Cir. 2004) (citations omitted).

### B.    Count 1, Firearm Possession

To establish a violation of 18 U.S.C. § 922(g)(1) for unlawful possession of a firearm by a felon, the government must prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he knowingly possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. *See United States v. Ferguson*, 211

No. 10-10886

F.3d 878, 885 n.4 (5th Cir. 2000); *see also* 18 U.S.C. § 922(g)(1).  Meza stipulated to his felony conviction, and only contests the sufficiency of the evidence on the second element (possession).

Possession of a firearm may be actual or constructive, and it may be proved by circumstantial evidence.  *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999).  "Actual possession" means that "the defendant knowingly has direct physical control over a thing at a given time." *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998).  The government proceeded against Meza on a constructive (not actual) possession theory.  "Constructive possession" may be found if the defendant had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found.  *See De Leon*, 170 F.3d at 496; *see also United States v. Hinojosa*, 349 F.3d 200, 203 (5th Cir. 2003).  When a residence is jointly occupied, however, a more exacting standard applies.  *Hinojosa*, 349 F.3d at 203-04 ("Although a defendant's exclusive possession of a house may establish his dominion and control over contraband found there, his joint occupancy of a house will not, by itself, support the same conclusion.").  In cases of joint occupancy, this court "will find constructive possession only when there is 'some evidence supporting *at least a plausible inference that the defendant had knowledge of and access to*' the illegal item." *Id.* at 204 (emphasis added) (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993)).  Ultimately, "[t]he determination of whether constructive possession exists is not a scientific inquiry," and the court must "employ a common sense, fact-specific approach." *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994) (citing *Mergerson*, 4 F.3d at 349).

On appeal, Meza acknowledges that the firearm was found on his property, and does not seriously contest the sufficiency of the evidence under a single occupancy constructive possession standard.  He argues instead that the government failed to meet the standard required for joint occupancy constructive

possession.  Meza argues that the joint occupancy standard applies because he shared his house with his girlfriend and another man, Salvador Aleman.  He further argues that, according to Sanchez, "everybody goes" on Meza's property, and "[t]hat's where everyone goes and chills."  Applying the joint occupancy constructive possession standard, Meza contends that there was insufficient evidence to support at least a plausible inference that he had knowledge of and access to the shotgun.  In response, the government argues that this is not a joint occupancy case and that there was ample evidence to demonstrate Meza's control over the property and the shotgun.  The government maintains that Sanchez's testimony to the contrary was simply not credible.

We find that there is sufficient evidence to support Meza's firearm possession conviction, whether it is evaluated under a single or joint occupancy standard.  The government proceeded primarily under a single occupancy theory, as it sought to prove Meza's "dominion or control over the premises in which the item is found." *De Leon*, 170 F.3d at 496.  Meza did not dispute at trial, and does not now dispute on appeal, that the shotgun and ammunition were found on his property.

There was more than sufficient evidence to prove that Meza had "dominion or control" over the property on which the shotgun was found.  Dominion or control over the premises may be shown by the presence of the defendant's personal belongings in the house, *United States v. Onick*, 889 F.2d 1425, 1430 (5th Cir. 1989), or by the presence of documents that are personal in nature, or by evidence that a defendant "could come and go as he pleased." *De Leon*, 170 F.3d at 497.  Here, the evidence establishing that Meza had dominion or control over the property includes testimony from Officers Schulte and King that: (1) Meza's name appeared on a water bill for the residence; (2) Meza departed the residence while it was under surveillance; (3) Meza had paystubs in a bedroom closet; and (4) mail addressed to Meza at that location was found in a car parked

in the driveway. Although Officer Schulte testified that he did not know whether other people also lived at the house, he agreed that he had no "reason to believe that there were other people that lived at th[e] house." The evidence establishing Meza's dominion or control over the property at issue was thus sufficient to establish Meza's constructive possession of the shotgun.[1]

As noted above, Meza's insufficiency argument relies upon his claim that his house was jointly occupied. This argument, however, is undermined by the fact that it was Sanchez who testified that others resided at Meza's house. Sanchez testified that another individual, Salvador Aleman, lived at the house, and that the house was regularly used by other members of the community. Given Sanchez's significant credibility problems, however, the jury was free to disbelieve his testimony in part or in whole. *See, e.g.*, *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir. 1995) ("The jury retains sole responsibility for determining the weight and credibility of the evidence."). In fact, we must assume that the jury found Sanchez incredible. *See United States v. Santillana*, 604 F.3d 192, 195 (5th Cir. 2010) ("We consider all evidence, credibility determinations, and reasonable inferences drawn therefrom in the light most favorable to the prosecution."). Without Sanchez's testimony, the remaining evidence at trial established that Meza alone exercised dominion or control over the premises, and therefore constructively possessed the shotgun.[2]

---

[1] The fact that the gun was found in an unlocked shed located approximately twenty feet behind Meza's house (rather than in the house itself) does not change our analysis. The shed was located on Meza's property, and a rational jury could infer that Meza exercised dominion or control over his entire property, including the shed. *See, e.g.*, *United States v. Carter*, 953 F.2d 1449, 1456 (5th Cir. 1992) (finding sufficient evidence to show constructive possession over contraband in a shed on defendant's property and explaining, "[a] rational jury could certainly find that Carter, as the lessee of the premises . . . exercised dominion over the entire property, including the shed behind the house.").

[2] Meza contends that an agent testified that Meza's girlfriend lived at the house. Agent Benavides briefly discussed Meza's girlfriend at Meza's detention hearing, however, not his trial.

No. 10-10886

Even if the evidence were evaluated under a joint occupancy standard, it would still be sufficient to sustain the conviction. Meza's argument with respect to joint occupancy relies largely on *United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993). In that case, police found a handgun between a mattress and boxsprings in a bedroom of a house that was jointly occupied by Mergerson and his girlfriend, Sheila Guy. *Id.* at 341, 348. There, unlike here, the parties did not dispute that Mergerson and Guy were cohabiting in the apartment and shared the bedroom in which the gun was found. *Id.* at 348. We explained in *Mergerson* that "[w]e have found constructive possession in [joint occupancy] cases only when there was some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Id.* at 349. We found in that case that the evidence was insufficient to establish constructive possession because the handgun was not in plain view and a receipt showed that Guy had purchased the gun. *Id.*

This case is distinguishable from *Mergerson* in several respects. First, the shotgun here was not hidden but rather was found in plain view on top of a washing machine in Meza's shed. This location supports an inference of constructive possession under a joint occupancy standard. In *United States v. Fields*, 72 F.3d 1200 (5th Cir. 1996), for example, the defendant challenged the sufficiency of the evidence with respect to his possession of a handgun and a shotgun found in a house that he occupied with his wife. *Id.* at 1211-12. The handgun was found underneath a mattress, but the shotgun was found leaning against a wall. *Id.* at 1211. Applying the joint occupancy constructive possession standard, we found sufficient evidence that the defendant had knowledge of and access to the shotgun, explaining:

> Although the evidence seems insufficient to show that Ross possessed the handgun, it is sufficient to show that he constructively possessed the shotgun. . . . Because Ross jointly occupied the house with his wife, the prosecution must show that

11

> Ross had access to and knowledge of the weapons. While there does not seem to be any evidence which shows that Ross had access to or knowledge of the handgun, the fact that the shotgun was found in plain view, leaning against a wall, is sufficient to establish that he had knowledge of and access to the shotgun.

*Id.* at 1212 (footnotes omitted); *see also United States v. Eaglin*, 275 F. App'x 344, 345 (5th Cir. 2008) (unpublished) (finding sufficient evidence of constructive possession when firearm was in plain view).

Second, the shotgun found in Meza's shed was loaded with ammunition from a box found inside Meza's bedroom. This also supports a plausible inference that Meza had knowledge of and access to the gun. *See United States v. McKnight*, 953 F.2d 898, 902 (5th Cir. 1992) (finding sufficient evidence of constructive possession in a joint occupancy case where a loaded handgun was found in a dresser that the defendant had used).

In sum, the evidence demonstrating that the shotgun was loaded and in plain view inside Meza's shed supports a finding of constructive possession, even under the more demanding joint occupancy standard. Indeed, the evidence at trial that supported Meza's innocence was Sanchez's testimony that Meza did not buy the gun from him and had nothing to do with the gun. Even putting aside the credibility concerns with Sanchez's testimony, it is well established that our review of the sufficiency of the evidence must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Sanchez's testimony was contradicted by other evidence in the record, and the jury was not bound to accept his testimony over the other evidence presented.

Applying the "common sense, fact-specific approach" used to determine constructive possession, *Wright*, 24 F.3d at 735, we conclude that the evidence

was sufficient to find that Meza constructively possessed the shotgun, under either a single or joint occupancy theory.

## C.     Count 2, Ammunition Possession

To obtain a conviction under 18 U.S.C. § 922(g)(1) for unlawful possession of ammunition by a felon, the government must prove that the defendant had "[1] been previously convicted of a felony, [2] that he knowingly possessed the ammunition and [3] that the ammunition traveled in or affected interstate commerce." *De Leon*, 170 F.3d at 496. As with firearm possession, possession of ammunition may be actual or constructive. *Id.*

Meza argues that the evidence was insufficient to prove that he constructively possessed the ammunition under a joint occupancy theory. According to Meza, none of the evidence established that he knew about the shells or had control over them. The government disagrees, asserting that there was sufficient evidence to find constructive possession under either a single or joint occupancy standard.

As with Count 1, Meza does not seriously dispute that there was sufficient evidence to convict under a single occupancy standard. Indeed, this analysis remains much the same. The evidence was sufficient to establish that Meza had dominion or control over the premises on which the ammunition was found. *See supra* Part I.B. Even proceeding under a joint occupancy standard, the evidence established at least a plausible inference that Meza had knowledge of and access to the ammunition. *See Mergerson*, 4 F.3d at 349. The ammunition was found in a back bedroom closet of Meza's house, near "a tin container that contained paycheck stubs belonging to Mr. Meza." This court has found sufficient circumstantial evidence of constructive possession in joint occupancy cases where contraband is found among a defendant's personal items. For example, in *United States v. Hooper*, 358 F. App'x 520 (5th Cir. 2009) (unpublished), the

13

court found sufficient evidence that Hooper possessed a firearm that was found in a bedroom.  The court explained:

> The loaded firearm was found on a shoe box on top of a bedroom dresser; a man's T-shirt was on top of the box; and a man's belt buckle and belt were next to the box.  The bedroom closet contained male clothing, including several items with Hooper's name on them; the dresser contained male clothing, a glove bearing the name "Dre Hooper," scales, and a warrant notice for Shannon Hooper; there were several pairs of men's shoes on the floor in front of the dresser; and the microwave in the kitchen had the name "Shannon Hooper" written on the bottom.  A rational juror could have found beyond a reasonable doubt that Hooper resided in the house and that he had knowledge of and access to the firearm.

*Id.* at 522; *see also De Leon*, 170 F.3d at 495, 497 (finding sufficient evidence to infer constructive possession where ammunition was found near defendant's state parole document, inside a dresser in defendant's girlfriend's home); *United States v. Felan*, 339 F. App'x 499, 499-500 (5th Cir. 2009) (unpublished) (finding sufficient evidence that a male defendant constructively possessed cocaine because "[t]rial testimony established that men's clothing was in the closet where the cocaine was found and that personal documents bearing [the defendant's] name were stored in the master bedroom where the closet was located.").

Meza maintains that the paystubs are "not probative of anything," as "Meza's girlfriend (or anyone else) could have just as easily gathered the stubs and put them in the tin."  Besides the fact that no one other than Sanchez testified that the house was jointly occupied, Meza's argument misses the point.  In evaluating the sufficiency of the evidence, it is well established that "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Infante*, 404 F.3d 376, 384-85 (5th Cir. 2005) (internal quotation marks omitted).

Although it may be possible that someone other than Meza collected his paystubs and put them in a can inside his bedroom closet, the jury was free to conclude that Meza did so instead. From this conclusion, the jury could infer that Meza constructively possessed the ammunition contained in the same bedroom closet. *See United States v. Flores-Chapa*, 48 F.3d 156, 161 (5th Cir. 1995) ("Juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.").

In sum, we conclude that the evidence sufficiently supported Meza's conviction on Count 2, under either a sole or joint occupancy standard.

**II. No material variance exists between the indictment, which charged Meza with possession of a firearm and a box of ammunition, and the proof at trial, which showed a loaded firearm and two boxes of ammunition.**

**A. Standard of Review**

Meza did not raise his material variance objection at trial, hence plain error review governs. Meza must demonstrate the district court committed (1) an error, (2) that was clear or obvious, and (3) that affected his substantial rights. *United States v. Burns*, 526 F.3d 852, 858 (5th Cir. 2008). Even if these conditions are satisfied, we will grant relief only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007) (internal quotation marks omitted).

**B. Discussion**

Count 1 of the indictment charged Meza with possession of "a firearm, that is, a Mossberg 12 gauge shotgun with serial number L760489," and Count 2 charged him with possession of "ammunition, that is, a box of 12 gauge Winchester shotgun shells." Meza contends that there was a material variance between the indictment and proof at trial because the indictment charged him with possession of "a firearm" and "a box" of shotgun shells, but at trial the

government proved that there were two boxes of shells, one of which was partially emptied and loaded into the shotgun. According to Meza, the government used this variance to its advantage, relying upon the fact that shells from one box were loaded into the shotgun to prove that Meza possessed both the shells and the firearm, and also to impeach Sanchez, who had said that the shotgun was not loaded.

The government argues that there was no variance. At trial, it proved what the indictment alleged—possession of a firearm and a box of ammunition. The government maintains that it must allege only the essential elements of the crime in the indictment, and the additional details to which Meza objects are not essential elements. The government also argues that, even if there was a variance, it did not affect Meza's substantial rights.

A material variance may be found "when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." *United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007) (internal quotation marks omitted). To prevail on a material variance claim, the defendant "must prove that (1) a variance existed between the indictment and the proof at trial, and (2) the variance affected [his] substantial rights." *United States v. Lewis*, 476 F.3d 369, 384 (5th Cir. 2007) (internal quotation marks omitted). This court determines whether a variance occurred by comparing the evidence presented at trial with the language of the indictment. *Mitchell*, 484 F.3d at 769. "The concerns underlying our cases on variance are to ensure that the indictment notifies a defendant adequately to permit him to prepare his defense, and does not leave the defendant vulnerable to a later prosecution because of failure to define the offense with particularity." *United States v. Hernandez*, 962 F.2d 1152, 1159 (5th Cir. 1992).

No. 10-10886

As an initial matter, Meza has not demonstrated a clear material variance (as required for plain error) with respect to either count of the indictment. Although Meza is correct that Count 1 refers only to "a firearm" and not a loaded firearm, § 922(g) does not distinguish between loaded and unloaded firearms. *See United States v. Munoz*, 150 F.3d 401, 417 (5th Cir. 1998) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1), just requires the defendant to possess 'a firearm' to violate it."). An indictment "need only charge the essential elements of the offense," *United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993), and the indictment did so here. The indictment need not specify that the shotgun was loaded.

With respect to Count 2, Meza is correct that there is some variation between the indictment and proof at trial. The indictment charges Meza with possession of "ammunition, that is, a box of 12 gauge Winchester shotgun shells." At trial, the government presented evidence of two boxes of ammunition, and demonstrated that the firearm was loaded with shells from one of the partially emptied boxes. This variance, however, is minor and insufficient for purposes of plain error review. This court has been reluctant to find a material variance where there were only minor variations between an indictment and proof at trial, even when not limited to plain error review. *See, e.g.*, *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011) (finding no material variance where there was a four month discrepancy in date of offense charged in indictment); *United States v. McCullough*, 631 F.3d 783, 793 (5th Cir. 2011) (finding no material variance where indictment referred to "Victim 2" but government limited its case at trial to one victim).[3]

---

[3] Meza relies upon *United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991). There, the indictment charged the defendant with use of a "Mossberg rifle," but the government introduced three guns at trial and the jury was instructed that it could convict if the defendant had used "a firearm." *Id.* at 379. Meza analogizes that case to this one: the government presented evidence of two boxes of ammunition, but only one box was charged in the

No. 10-10886

Finally, even if a variance with respect to Count 1 or Count 2 were considered material (and a clear error), Meza has not shown that it affected his substantial rights. This court has explained that "a variance between allegations and proof is fatal 'only when it affects the substantial rights of the defendant by failing to sufficiently notify him so that he can prepare his defense and will not be surprised at trial.'" *Girod*, 646 F.3d at 317; *see also United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) ("A variance is material if it prejudices the defendant's substantial rights, either by surprising the defendant at trial or by placing the defendant at risk of double jeopardy.") (internal quotation marks omitted). The indictment specifically identified both the shotgun and ammunition at issue, and Meza has not persuasively argued that the variance took him by surprise or that he would have defended the case differently had the indictment been more precise. Meza's lack of surprise is demonstrated by the fact that he did not object to the variance at trial.

Because Meza has failed to demonstrate that any material variance "affected the fairness, integrity or public reputation of judicial proceedings," as is required on plain error review, *e.g. United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009), we reject Meza's material variance argument.

## III.  Evidentiary Rulings

### A.  Standard of Review

This court "'review[s] a district court's evidentiary rulings for abuse of discretion,' subject to harmless-error analysis."*Girod*, 646 F.3d at 318 (internal

---

indictment, and the jury was instructed that it could convict based upon a finding that Meza "possessed ammunition." In *Leichtnam*, the court was concerned that the jury could have convicted the defendant for possessing any of the firearms introduced at trial, not just the one charged in the indictment. *Id.* at 380-81. *Leichtnam* does provide some support for Meza's position that a variance existed, although "ammunition" is a less discrete concept than "a firearm." In other words, whether Meza had one box or two, he still possessed ammunition, and was convicted on that count. There is little danger that the jury convicted Meza of possessing ammunition based upon one box of shotgun shells but not the other. Any variance here was not clear enough to rise to plain error.

quotation marks omitted).  "[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights." *Id.*  (internal quotation marks omitted). "[E]rror in admitting evidence will be found harmless when the evidence is cumulative, meaning that substantial evidence supports the same facts and inferences as those in the erroneously admitted evidence." *United States v. El-Mezain*, 664 F.3d 467, 526 (5th Cir. 2011).

### B.     The district court did not abuse its discretion in allowing the government to impeach its witness, Chris Sanchez, with a prior inconsistent statement pursuant to Federal Rule of Evidence 613(b).

When Sanchez was questioned by investigators after his arrest, he told them that he had sold the shotgun to Meza.  At trial, however, Sanchez testified that he "never sold [the gun] to [Meza].  This man didn't have nothing to do with it."  When confronted with the prior inconsistent statements, Sanchez did not deny making them, but rather on direct, cross, redirect and recross examination, explained that he had lied because he had been scared and did not know what to do.  When the government offered audio recording of Sanchez's original statements to law enforcement incriminating Meza, Meza's counsel objected on hearsay and Rule 403 grounds.  The district court heard argument, recessed, and then overruled the objections, including a sufficiently preserved one under Rule 613(b), allowing, in part, the government to call Agent Benavides to play the recording.  In the recording, Sanchez told investigators that he had sold the stolen shotgun to Meza for approximately $100 in cash, at Meza's house.  The district court gave limiting instructions (consistent with Meza's original request) that the recording be limited to impeachment use only, under Rule 613(b). Thereafter, the district court sustained Meza's objections to questions asked of Agent Benavides about the recorded statements.

No. 10-10886

On appeal, Meza argues that Sanchez's prior statements to Benavides were inadmissible even under Rule 613 because Sanchez did not deny making those statements. Meza argues that he was substantially prejudiced because the prosecutor relied on Sanchez's statements during closing arguments, contending also that the district court's limiting instructions were ineffectual. In response, the government argues that the extrinsic audio recording was admissible because Sanchez "attempted to explain [his prior inconsistent statement] by claiming that he was afraid of being caught in a lie by the authorities," whereas in fact he had told authorities that he was scared of Meza. The government argues that the jury was entitled to consider Sanchez's prior statement to judge his credibility. The government also argues that any error was harmless.

We hold that the district court did not err in admitting, along with explicit limiting instructions for impeachment use only, Sanchez's prior statements under Rule 613(b), which provides, "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."

The plain language of the Rule makes no exception for prior inconsistent statements that are explained instead of denied. What the Rule does require is a foundation requirement that a witness have the chance either to explain or to deny the inconsistent statement before extrinsic proof is allowed. Not surprisingly, explanations and denials run the gamut of human ingenuity, ranging from a flat denial, to an admitted excuse, to a slant, to a disputed explanation, or to a convincing explanation. Whether flatly denied or convincingly explained, the inconsistency can stay inconsistent. By contrast, an unequivocal or obliging admission of the prior statement may indeed render it

No. 10-10886

consistent,[4] hence inadmissible under Rule 613(b).[5]  The framers of Rule 613(b) were prudent, therefore, not to turn admissibility strictly on whether and how litigants later characterize the variability of explanations and denials.  For example, here, Meza contends that Sanchez spoke truthfully at trial when he explained his earlier statement incriminating Meza as a frightened but false effort to blame-shift; the government, contrastingly, contends that Sanchez's denial of the correctness of his earlier statement is the evasion, an attempt to exculpate Meza, whom Sanchez fears.  Either purpose is plausible but neither is determinative for Rule 613(b) admissibility.  Notably, the jury heard without objection Sanchez's explanation, and was instructed as to the limited impeachment use of Rule 613(b) evidence altogether.

Slightly more elaboration is warranted because of caselaw Meza draws to our attention.  He points to a footnote in *United States v. Seale*, 600 F.3d 473, 493 n.11 (5th Cir. 2010), which, in turn, quotes *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991).  *Devine* was a failure to remember case, however, which, we acknowledge, *supra* note 4, can present a district court with a fact-specific inquiry of whether a claim of forgetfulness about a prior statement is genuine or feigned, and therefore consistent or inconsistent, respectively.  *See* Fed. R. Evid. 104; *see also United States v. Hale*, 685 F.3d 522, 539 (5th Cir. 2012) (citing *Devine*, 934 F.2d at 1344).  Our short discussion in *United States*

---

[4] Facts can complicate whether a claim of forgetfulness, not a denial or an explanation, creates an inconsistency for purposes of Rule 613(b).  *Compare United States v. Devine*, 934 F.2d 1325, 1344-1345 (5th Cir. 1991); *United States v. Balliviero*, 708 F.2d 934, 939-40 (5th Cir. 1983), *with United States v. Grubbs*, 776 F.2d 1281, 1287 (5th Cir. 1985); *United States v. Bigham*, 812 F.2d 943, 946-47 & n.3 (5th Cir. 1987).  This case does not present that issue.

[5] This discussion is confined to Rule 613(b).  A district court may have separate authority to exclude a prior statement as, for example, hearsay, if it is being offered as such, or by balancing its probative value against incidental probative dangers under Rule 403.  *See also* Fed. R. Evid. 613(b) (additional catchall "interests of justice" authority over extrinsic evidence of prior inconsistent statement).  Again, hearsay and Rule 403 were Meza's primary objections, he prevailed on the first and, as discussed below, lost on the second.

No. 10-10886

*v. Greer*, 806 F.2d 556, 558-559 (5th Cir. 1986), is more difficult to harmonize. In *Greer*, a cooperating co-defendant testified for the government and implicated defendant Greer in an obstruction of justice scheme, but "admitted on cross-examination that he made [a] previous inconsistent [tape-recorded] statement" when he denied the obstruction. *Id.* at 559. That admission, we stated, made the recording "excludable." *Id.* (citing both Rule 613(b) and *United States v. Roger*, 465 F.2d 996, 997-98 (5th Cir. 1972)). Our discussion in *Greer*, however, gives no insight into whether and how the admission was less an explanation of an inconsistency–contemplated by Rule 613(b) still to permit extrinsic proof for impeachment, *see, e.g.*, *United States v. Jones*, 135 F. App'x 651, 652 (5th Cir. 2005) (unpublished)–than an unequivocal or obliging admission making any inconsistency negligible, so warranting exclusion under common law as applied in *Roger*, under Rule 403 today, or under Rule 613(b)'s interests of justice catchall provision.

Regardless, we find that any evidentiary error would have been harmless for several reasons. First, as described above, there was more than sufficient evidence to convict Meza under Count 1 and Count 2, without Sanchez's statement.[6] Second, if Sanchez's explanation were an unequivocal or obliging admission, the recording reiterates statements that Sanchez admitted to making when he was questioned by the prosecutor. The recording allowed the jury to hear Sanchez himself state that he sold the gun to Meza, but the statements were short in duration and made only after Sanchez first claimed that he did not remember to whom he sold the guns or where the transaction occurred.

---

[6] Other than his testimony regarding joint occupancy (which was not contradicted on the recorded statement), Sanchez's prior statement to investigators had no effect on Count 2. Sanchez told investigators that he did not sell or give Meza any ammunition and that he never saw any ammunition in Meza's house.

No. 10-10886

Meza is mistaken when he argues that the government relied upon Sanchez's recorded statements during closing argument. The government did refer to Sanchez's testimony during its closing argument, but only to discuss his credibility. The closest the prosecution came to relying upon Sanchez's recorded statements for their truth came at the beginning of the closing argument, when the prosecutor began:

> Let's start off from the very beginning with Chris Sanchez, okay. Chris Sanchez is a young man who talked to police officers and agents two different times before appearing here today, nine months apart, not looking at any statements or reports, and what did he say to the police officers? The same basic facts, that he stole those firearms from the pawn shop, that he broke into –

At that point, defense counsel objected that the prosecutor was "trying to use that statement as evidence of [Meza's] guilt when it's only offered for the limited purpose of impeachment." The district court, in abundance of caution, reiterated its limiting instruction, and the prosecutor continued:

> And the reason I bring Mr. Sanchez and the testimony up and the conflicting statements is because I want you to use your common sense and reasoning regarding his truthfulness on the stand, regarding his credibility. Obviously this is an individual who got up here and said something very different from what he said on a prior occasion.
>
> Now, why he came up here today and said what he said, that's for y'all to decide. Why, when talking to police officers, he iterated certain facts not once but twice over, the very same set of facts; and then today, when facing all of us, he changes his story. Well, that's for y'all to decide. You need to take that and consider what you will with it.
>
> But I will point out, specifically, regarding his credibility at this point, what did he say? Well, I put that gun in a back bedroom. And y'all know that wasn't the case. It wasn't found in a back bedroom. It was found in a shed. What else did he say? Well, he said it wasn't loaded. You all also know that that wasn't the case. It had eight live rounds in it.

23

No. 10-10886

Additionally, the prosecutor said: "With regard to Chris Sanchez, it is up to you to determine his credibility. I would submit to you that he came in here and he lied. That's up to you." The prosecutor thus did not rely upon Sanchez's recorded statement to support the truth of the matter asserted. Indeed, when the prosecution explained why it believed that it had proven the possession element beyond a reasonable doubt, it did not discuss Sanchez's recorded statement at all, but instead summarized evidence showing that Meza lived at the address where the shotgun was found: "Mail was found there with his name and his address. Pay stubs, belonging to him, were found in the closet. He was seen leaving that location when he was arrested on that date."[7] In sum, the record does not reflect that the prosecution improperly relied upon Sanchez's prior inconsistent statement, or did anything other than question his credibility in light of the evidence presented at trial.

As emphasized above, the district court gave limiting instructions on three separate occasions. This court has relied upon proper limiting instructions to support a finding of harmlessness. *See, e.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 762-63 (5th Cir. 2008) (finding no error in admitting a prior inconsistent statement as impeachment evidence where the district court provided the proper limiting instructions to the jury).

---

[7] The government also argued that even if the jury were to believe Sanchez's in-court testimony, it conflicts with other evidence. The prosecutor argued, "[Sanchez] said he put the shotgun in the back bedroom. That wasn't where it was, and he said it wasn't loaded. So even if you buy that part of his story, that means somebody loaded that gun with those shells that were in that closet and put it in the shed. It's Christobal [sic] Meza's house. Christobal Meza did that."

### C. The district court did not abuse its discretion under Federal Rule of Evidence 403 in admitting Sanchez's prior inconsistent statement.

Meza also objected to the admission of Sanchez's statement on Rule 403 grounds, an objection he re-urged after his Rule 613 objection was overruled. The district court overruled this objection.

Under Rule 403, a district court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The standard of review for an alleged Rule 403 violation is "'especially high' and requires 'a clear abuse of discretion' for reversal." *United States v. Setser*, 568 F.3d 482, 495 (5th Cir. 2009); *see also El–Mezain*, 664 F.3d at 511 (stating that this court shows "significant deference . . . to the district court in Rule 403 matters"). "Any error in admitting such evidence is subject to harmless error review, and reversal is not required unless there is a 'reasonable possibility that the improperly admitted evidence contributed to the conviction.'" *United States v. Williams*, 620 F.3d 483, 492 (5th Cir. 2010).

Meza argues that the probative value of Sanchez's prior statements was minimal, as Sanchez had acknowledged his recantation on the stand. Meza maintains that the potential for undue prejudice was great because it allowed the government to "improperly focus the jury on an inculpatory (but unsworn) prior version of Sanchez's statement rather than the exculpatory trial testimony made under oath." Meza further argues that the evidentiary error affected his substantial rights because the government intended to use Sanchez's statements as more than impeachment evidence. The government contends that the probative value of Sanchez's prior statement was high because Sanchez's credibility was a critical issue at trial, whereas any prejudicial effect was minimal because the district court issued limiting instructions regarding the recording and the statement was cumulative of Sanchez's admission on the

stand. The government also argues that admission of the statement, even if erroneous, was harmless.

We hold that the district court did not commit a clear abuse of discretion in admitting the statements. As the government notes, the prior statements were probative of Sanchez's credibility, a central issue in the case. Indeed, even Meza relied upon Sanchez's testimony to support his joint occupancy argument. Although the statements prejudiced Meza, this prejudice was not unfair and did not substantially outweigh the statements' probative value.

## IV.    The government did not engage in misconduct during closing argument.

### A.    Standard of Review

This court "analyze[s] assertions of prosecutorial misconduct in closing arguments in two parts. [First, the court] consider[s] whether the prosecutor made an improper remark; if so, [the court] then evaluate[s] whether the remark affected the substantial rights of the defendant. The first question is reviewed de novo; the second is reviewed for abuse of discretion." *United States v. Turner*, 674 F.3d 420, 438-39 (5th Cir. 2012) (internal quotation marks and footnotes omitted). "Ordinarily, a defendant's substantial rights are affected only where the error in question affected the outcome of the district court proceedings. To make that determination, [the court must] assess (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *Id.* at 439 (internal quotation marks and footnotes omitted). Where, however, a defendant fails to object, the court will apply a plain error standard of review. *See United States v. Garcia*, 522 F.3d 597, 599-600 (5th Cir. 2008).

### B.    Discussion

Meza challenges several statements that the prosecution made during closing argument. First, Meza objects to the prosecutor's "open-ended

No. 10-10886

speculation" as to the reasons for Sanchez's inconsistent statements on the stand. Specifically, Meza takes issue with the following statement: "Now, why [Sanchez] came up here today and said what he said, that's for y'all to decide. Why, when talking to police officers, he iterated certain facts not once but twice over, the very same set of facts; and then today, when facing all of us, he changes his story. Well, that's for y'all to decide. You need to take that and consider what you will with it." Second, Meza objects to the prosecutor's statement regarding the short duration of the trial: "Ladies and gentlemen, I would like to thank you again for your attention. It's great that this trial was so brief because you—all the testimony will be very fresh in your mind." Finally, Meza objects to what he claims to be the prosecutor's "expressed personal opinions and beliefs." He points to these statements:

> And the reason I bring Mr. Sanchez and the testimony up and the conflicting statements is because I want you to use your common sense and reasoning regarding his truthfulness on the stand, regarding his credibility. . . . But I will point out, specifically, regarding his credibility at this point, what did he say?

> And I can't urge you enough that these are two separate counts in the indictment, and you are not to consider them together, you need to consider one at a time, and hold him accountable for each.

> Again and again, I don't think there is any issue at all regarding Mr. Meza living at that house, that being his house.

In response, the government argues that plain error review applies because Meza never properly objected to these statements, and that the prosecutor did not make improper or prejudicial remarks. Even if any of the comments were improper, the government maintains that they did not affect Meza's substantial rights.

As an initial matter, we limit our review to plain error with respect to all three alleged errors. Meza admits that he did not object to the last two

27

statements at issue, but claims that he preserved his objection with respect to the prosecutor's allegedly improper credibility argument. The record does not so reflect. Meza's only objection to the arguments regarding Sanchez's credibility was to the prosecutor's attempt to use impeachment evidence for an improper purpose: "Judge, I'm going to object. I think he is trying to use that statement [from Sanchez] as evidence of his guilt when it's only offered for the limited purpose of impeachment." Without a proper objection on the ground now asserted on appeal, plain error review is proper.

Regardless of the standard of review, we do not see how any of the prosecutor's statements were improper. This court has explained that "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *Turner*, 674 F.3d at 439 (internal quotation marks omitted). Considering first the prosecutor's statements regarding Sanchez's inconsistent testimony, the prosecutor did not "personally vouch for the credibility of a government witness." *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998). Instead, he merely recited "to the jury those inferences and conclusions []he wishe[d] [the jury] to draw from the evidence." *Id.* at 414. The prosecutor repeatedly told the jury that they were to determine Sanchez's credibility, and only highlighted discrepancies between Sanchez's testimony on the stand and his prior statements. This argument was not improper.

Second, the prosecutor's comment regarding the short duration of the trial was not improper. Meza relies upon cases in which a prosecutor alluded to the testimony of uncalled witnesses during closing argument. In *United States v. Maddox*, 156 F.3d 1280, 1283 (D.C. Cir. 1998), the District of Columbia Circuit warned that "[w]hen a prosecutor starts telling the jury about what other potential witnesses would have said if the government had only called them, it is time not merely to sustain an objection but to issue a stern rebuke and a

No. 10-10886

curative instruction, or if there can be no cure, to entertain a motion for a mistrial." The prosecutor's brief statement regarding the short duration of the trial is wholly different in kind from the statements at issue in *Maddox*, and was not improper.

Finally, Meza has failed to identify statements that constitute improper expressions of the prosecutor's personal beliefs. While the prosecutor spoke in the first person, the record does not demonstrate that he attempted to provide a personal opinion as to Sanchez's credibility.[8] The comments are different from those at issue in the cases upon which Meza relies, all of which involved improper efforts by prosecutors to bolster the credibility of testifying law enforcement officers. *See United States v. Gallardo-Trapero*, 185 F.3d 307, 319-20 (5th Cir. 1999); *see also United States v. McCann*, 613 F.3d 486, 496 (5th Cir. 2010); *United States v. Garza*, 608 F.2d 659, 662-66 (5th Cir. 1979).

In sum, there is no clear and obvious error in this case, as required for plain error review. Even if there were, Meza has not demonstrated that these isolated comments affected his substantial rights or that they "affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009) (internal quotation marks omitted).

**V.     Meza's separate sentences under 18 U.S.C. § 922(g)(1) for possession of a firearm and possession of ammunition violate the Double Jeopardy Clause.**

As noted above, the indictment charges Meza with simultaneous possession "on or about July 22, 2009" of a firearm and of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Meza was convicted on both

---

[8] There is one possible exception. During closing, the prosecutor stated, "[w]ith regard to Chris Sanchez, it is up to you to determine his credibility. I would submit to you that he came in here and he lied. That's up to you." This comes closer to a personal opinion as to Sanchez's credibility; however, Meza has failed to demonstrate that it affected his substantial rights.

29

No. 10-10886

counts and sentenced to consecutive 120 month terms on each count. This runs afoul of our decision in *United States v. Berry*, 977 F.2d 915 (5th Cir. 1992); *see also United States v. Dunford*, 148 F.3d 385, 389-90 (4th Cir. 1998) (listing consensus of courts applying this double jeopardy rule).

In *Berry*, a search of the defendant's apartment yielded two handguns with ammunition, a third without ammunition, and a photograph of the defendant holding two of the weapons. *Id.* Berry (a convicted felon) was tried and convicted on three counts of possession of a firearm and one count of possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g), as well as one count of carrying a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). *Id.* at 917-19. Thus, "Berry's conviction was premised on one episode of possession of firearms and ammunition but he was convicted and sentenced separately for each weapon and the ammunition possessed." *Id.* at 918. According to the court, "[t]his raise[d] serious questions of double jeopardy." *Id.*

The court in *Berry* first found that the conviction under § 924(c) did not raise double jeopardy concerns because it "involves an element distinct from any other offense charged, drug trafficking, and does not require proof of a prior felony conviction." *Id.* at 919. The court, however, reached a different result with respect to the convictions under § 922(g)(1). The court explained:

> Berry's multiple convictions and sentences for violation of 18 U.S.C. § 922(g)(1) . . . are not so readily dispatched. Berry was convicted for possession of the guns only, there was no allegation or proof of other elements such as a separate act of transportation in interstate commerce, that the guns were procured by misrepresentation, that Berry was illegally in the country, or that one of the weapons was illegally altered. *The evil Congress sought to suppress by section 922 was the arming of felons; the section is based on the status of the offender and not the number of guns possessed. For the same reasons, we cannot conclude that Congress intended the*

30

No. 10-10886

*simultaneous possession of ammunition to stand as a distinct unit of prosecution.*

*Id.* (emphasis added) (footnotes omitted).  The court continued:

> In such an instance, the government may charge and try a defendant for multiple offenses, but there may not be simultaneous convictions and sentences for should the jury return guilty verdicts for each count, . . . the district judge should enter judgment on only one of the statutory offenses.
>
> If in doubt of its ability to prove possession of any of the weapons involved, the government properly could have sought to prove possession of all.  Moreover, had the government evidence that Berry obtained the guns at different times or stored them in separate places, then it could have sought to prove that.  But simultaneous convictions and sentences for the same criminal act violates the double jeopardy clause. We perforce must vacate those sentences . . . .

*Id.* at 920 (citations and internal quotation marks omitted).  The court rejected the government's argument that Berry's failure to object to the indictment bars his double jeopardy argument, explaining, "[w]e apply a rule which allows the criminal defendant to complain of non-concurrent multiple sentences on appeal despite a failure to complain of the multiple indictments." *Id.*

This court repeatedly has applied *Berry*, often in short per curiam decisions after multiple convictions for firearm and ammunition possession under § 922(g)(1).  *See, e.g.*, *United States v. Ayala-Juarez*, 472 F. App'x 307, *1 (5th Cir. 2012) (unpublished) ("Ayala appeals the sentence he received after he pleaded guilty to possession of a firearm by a convicted felon and to possession of ammunition by a convicted felon.  Each count charged a violation of 18 U.S.C. § 922(g)(1).  Ayala argues that under [*Berry*], his conviction and sentence on one of his counts must be vacated because his two convictions and sentences are multiplicitous and violate the Double Jeopardy Clause.  The government agrees . . . ."); *United States v. Fields*, 225 F. App'x 292, 292-93 (5th Cir. 2007)

No. 10-10886

(unpublished) ("Fields appeals following her guilty-plea convictions for being a felon in possession of a firearm (Count One) and for being a felon in possession of ammunition (Count Two), in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). . . . Simultaneous convictions and sentences for the same criminal act involving possession of a firearm and possession of ammunition violate double jeopardy."); *United States v. Saldua*, 120 F. App'x 553, 554 (5th Cir. 2005) (unpublished) (same).

As in *Berry*, Meza was convicted under § 922(g)(1) for simultaneous possession of a firearm and ammunition, both of which were found during the single police search of his property. The indictment alleges that Meza possessed both the firearm and ammunition that day (July 22, 2009). We perceive no relevant distinctions between this case and *Berry*, therefore.

In several unpublished decisions, this court has quoted *Berry* to distinguish its outcome if the record "prove[d] that [the defendant] obtained the firearm and ammunition on different occasions." *United States v. Castro*, 227 F. App'x 386, 386 (5th Cir. 2007) (unpublished); *see also United States v. Everett*, 237 F.3d 631, *6 (5th Cir. 2000) (unpublished). Legally, however, the government did not charge Meza with receiving or possessing at some earlier date the gun or the ammunition. Meza was charged, in each count singularly, with possession on July 22, 2009. Correspondingly, factually, none of the witnesses testified as to earlier dates on which Meza received or obtained, hence earlier possessed, the firearm and ammunition.[9] The only relevant, affirmative

---

[9] The government contends that "*Everett* aligns with binding precedent," citing *United States v. Bullock*, 615 F.2d 1082 (5th Cir. 1980); however, the government also candidly quotes that in *Bullock*, this court applied a predecessor statute and highlighted that the defendant was charged conjunctively with receiving and possessing, hence could be "punished separately for separate receptions and separate possessions." *Id.* at 1085-86. Here no separate reception and possession was charged or proven or even argued against Meza. *See United States v. Hodges*, 628 F.2d 350, 352 (5th Cir. 1980) (finding double jeopardy violation under predecessor statute despite appellate effort by government to differentiate receptions of firearms "when the case was tried to the jury as one essentially of simultaneous possession," i.e. when "[n]o

proof implying any such argument would be Sanchez's prior inconsistent statement that he sold the gun (but not ammunition) to Meza. This recanted statement, however, was admitted for impeachment only. In summary, absent an indictment charging Meza with possessing or receiving the firearms and ammunition on separate occasions, and proof and argument supporting the same, his dual convictions and sentences under § 922(g)(1) cannot stand under *Berry*.

Although Meza failed to raise this double jeopardy concern at trial and in initial briefs on appeal, the Supreme Court has recognized an appellate court's ability to address certain issues *sua sponte*:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Atkinson*, 297 U.S. 157, 160 (1936); *see also Silber v. United States*, 370 U.S. 717, 718 (1962) ("The Court has 'the power to notice a plain error though it is not assigned or specified.'"). Consistent with *Atkinson*, this court has reviewed unpreserved double jeopardy issues for plain error. *See United States v. Pineda-Ortuno*, 952 F.2d 98, 105 (5th Cir. 1992) (reversing conviction on double jeopardy grounds and stating, "[w]here plain error is apparent, the issue may be raised *sua sponte* by this court even though it is not assigned or specified."). This standard is met here. As explained above, the double jeopardy error is clear in light of *Berry*, 977 F.2d at 920, and if it were not recognized, Meza would serve a consecutive 120 month sentence on his second

---

attempt was made at trial to differentiate the firearms"); *United States v. McCrary*, 643 F.2d 323, 326-28 (5th Cir. Unit B Apr. 1981) (double jeopardy violation when argument and verdict supported singular possession of several guns even when stored separately in one dwelling); *United States v. Harper*, 802 F.2d 115, 118-119 & n.4 (5th Cir. 1986) (no double jeopardy violation when each count involved different firearms received and possessed at different times).

conviction.  Moreover, because the issue might be raised in subsequent habeas proceedings, judicial economy, as commendably acknowledged by the government during oral argument, suggests that the court address the issue now.  *See Pineda-Ortuno*, 952 F.2d at 105 ("Fairness as well as judicial economy dictate that we address now this issue that would doubtless otherwise be raised in a subsequent *habeas* proceeding.").[10]

As a remedy for this double jeopardy circumstance, we generally vacate a defendant's sentences, remand for dismissal of one of the multipicitous convictions (at the election of the government), and order resentencing.  *See, e.g.*, *Berry*, 977 F.2d at 920; *Saldua*, 120 F. App'x at 554.  We may deem the conviction on the remaining count affirmed.  *See, e.g.*, *United States v. Osunegbu*, 822 F.2d 472, 481 (5th Cir. 1987) ("We conclude . . . that Mrs. Osunegbu was improperly convicted twice for the same offense.  Mrs. Osunegbu's sentence is therefore vacated.  The matter is remanded with instructions that the conviction of Mrs. Osunegbu on one of the possession counts, at the election of the government, is to be reversed and that count is to be dismissed.  The convictions on the remaining possession count and the conspiracy count shall be deemed affirmed, and Mrs. Osunegbu shall be resentenced on those counts."); *United States v. Greer*, 46 F. App'x 225, *2 (5th Cir. 2002) (unpublished) ("[T]he sentences are vacated and the matter remanded to the district court with instructions that the conviction of Greer on one of the counts, at the election of the Government, is to be reversed and that count is to be dismissed.  The district court is further instructed to resentence Greer on the remaining conviction.  The conviction on the remaining count is deemed affirmed.").

---

[10] In abundance of caution, both parties were instructed to submit supplemental argument on this issue, and it was a focus of oral argument as well as additional post-argument filings pursuant to Federal Rule of Appellate Procedure 28(j).  It is worth noting that Meza's original plea contemplated conviction on one count only, hence the district court and counsel for both parties would have anticipated no double jeopardy concern.

No. 10-10886

## CONCLUSION

For the reasons stated above, we AFFIRM Meza's judgment of conviction, but vacate Meza's sentences, remand for dismissal of one of the counts of the indictment (at the government's election), and order resentencing on the count selected by the government.