# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3671

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Kevin Vincent Price, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 16, 2011
Filed: August 12, 2011

_____

Before MURPHY and SMITH, Circuit Judges, and SCHREIER,[1] District Judge.

_____

MURPHY, Circuit Judge.

Kevin Vincent Price pled guilty to being a felon in possession of a firearm after police found semiautomatic weapons in his home while executing a search warrant. The district court[2] sentenced Price to 37 months in prison, the lowest recommended sentence under the United States Sentencing Guidelines (U.S.S.G.), and two years of

_____

[1] The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota, sitting by designation.

[2] The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

supervised release. Price appeals, arguing that the district court improperly weighed certain sentencing factors and that his sentence was unreasonable. We affirm.

In February 2010, police officers searched Price's home under a valid search warrant and found a stolen semiautomatic pistol under his mattress and a semiautomatic rifle with a loaded magazine leaning against the bedroom wall. Another thirty round magazine was taped to the one already inserted in the rifle. Photographs of Price and others displaying gang signs were also discovered. Price admitted that the weapons belonged to him.

Pursuant to a plea agreement that referenced both the pistol and the rifle in a single count, Price pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The plea agreement foresaw a base offense level of at least 20 and reserved Price's right to seek a downward departure. While a felon in possession of most firearms would have a base offense level of 14, see U.S.S.G. § 2K2.1(a)(6), Price's base offense level was higher under U.S.S.G. § 2K2.1(a)(4)(B) since the semiautomatic rifle in his bedroom was capable of accepting a large capacity magazine and he had previously been convicted of a crime that was punishable by over one year of imprisonment. See U.S.S.G. § 2K2.1 cmt. nn.2 & 3.

At sentencing the district court adopted the presentence investigation report's recommended guideline range of 37–46 months. Price requested a downward departure to 24 months, arguing that a sentencing enhancement under § 2K2.1(a)(4)(B) was unreasonable. Counsel for Price argued that the rifle found in his bedroom was likely a "showpiece" not intended for criminal use. He also presented data in support of his argument that semiautomatic firearms capable of accepting large capacity magazines do not pose an increased risk to public safety because more people are killed every year in the United States by handguns.

The government requested a sentence at the high end of the guideline range because Price had admitted to possessing a weapon with a large capacity magazine "for his protection" and he had gang affiliations. A special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified that with a full magazine taped to one already loaded in the rifle Price could have immediately reloaded his weapon. The agent also identified several individuals in the photographs found in Price's room as having known gang associations or currently serving federal sentences for drug or firearm offenses.

After analyzing the factors set out in 18 U.S.C. § 3553(a), the district court determined that the 37 to 46 month guideline range was reasonable. It specifically noted Price's "circumstances and background," "issues of deterrence," and the seriousness of his offense. The district court did not discuss Price's alleged gang involvement. While expressing some skepticism that he possessed the semiautomatic rifle for a benign purpose, the district court stated that it would make no finding about its potential use but would rely on the statutory factors set by Congress in reaching Price's sentence. It subsequently sentenced Price to 37 months.

On appeal Price contends that the district court erred procedurally by improperly relying on his purpose for owning the rifle, considering his alleged gang affiliation which had not been proven by a preponderance of the evidence, and failing to address his data on the relative number of deaths resulting from the use of handguns as opposed to the type of semiautomatic weapon referenced in U.S.S.G. § 2K2.1(a)(4)(B). Price also argues that the district court imposed a substantively unreasonable sentence because it had not departed downward.

In reviewing sentences imposed by a district court we check first for procedural error, such as improperly calculating the guideline range, ignoring the statutory sentencing factors, basing a sentence on clearly erroneous facts, or failing to explain the sentence adequately. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009)

(en banc). We next consider the substantive reasonableness of the sentence, id., and a sentence within the guideline range is presumed reasonable. United States v. Keating, 579 F.3d 891, 894 (8th Cir. 2009).

We find no procedural error in this case. Price's argument that the district court erroneously relied on his purpose for possessing the semiautomatic rifle lacks merit. A district court is entitled to consider the characteristics of a weapon because such an inquiry is unquestionably relevant to "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Price cites no authority limiting a sentencing court's ability to consider the potential uses of such a firearm by a felon. In any event the district court made clear Price's potential use of the semiautomatic rifle was "neither here nor there," because its duty was to impose a reasonable sentence in light of all the § 3553(a) factors.

Nor did the district court erroneously rely on Price's alleged gang affiliation in crafting its sentence. There is no indication that the district court gave any weight at all to Price's alleged gang affiliation. It did not even mention a potential enhancement for gang activity under U.S.S.G. § 5K2.18, and it sentenced Price to the shortest term in the applicable guideline range. While the district court said that it had considered Price's "circumstances and background," that does not mean that his alleged gang affiliation affected his sentence. See United States v. Reese, 240 F. App'x 168, 169 (8th Cir. 2007) (per curiam).

The district court also did not err by not directly addressing Price's argument that semiautomatic rifles capable of accepting large capacity magazines are less dangerous than handguns. A district court is "not required to make a specific rejoinder to each argument advanced by the defendant." United States v. Barron, 557 F.3d 866, 868 (8th Cir. 2009). We conclude that the district court adequately addressed Price's argument by stating on the record that the calculated guideline range was reasonable in light of the circumstances of this case and the § 3553(a) factors.

Finding no procedural error, we turn next to Price's appeal on the substantive reasonableness of his sentence. In crafting the guidelines, the United States Sentencing Commission "has authority to implement its own policy judgments about the relative severity of federal crimes" and the district court may then evaluate the applicability of a recommended guideline while considering the § 3553(a) sentencing factors set by Congress. Barron, 557 F.3d at 871. A district court may deviate from a sentencing guideline where empirical data shows that adherence to it would yield a sentence that is "greater than necessary." Kimbrough v. United States, 552 U.S. 85, 109–10 (2007).

Price presents empirical evidence that homicides are most often committed with handguns and that the semiautomatic weapons referenced in U.S.S.G. § 2K2.1(a)(4)(B) are used in a relatively small percentage of all gun crimes. See e.g., James Alan Fox & Marianne W. Zawitz, Bureau of Justice Statistics, Homicide Trends in the United States 5–6 (2005). Price contends that this means that semiautomatic rifles capable of accepting large capacity magazines are actually "less dangerous" than handguns. He argues that the district court abused its discretion by refusing to depart downward from U.S.S.G. § 2K2.1(a)(4)(B) and thereby imposing a longer sentence for his possession of a semiautomatic rifle.

Guideline section 2K2.1(a)(4)(B) recommends a base offense level of 20 if the offense involved certain dangerous weapons and the defendant has been convicted of certain felonies or is otherwise prohibited from possessing such weapons. This guideline section was originally adopted in 1995 and then was amended in 2006 to recommend a base level of 20 for offenses that involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." See Barron, 557 F.3d at 870 (providing history of the guideline and its amendment). Section 2K2.1(a)(4)(B) was crafted by the Sentencing Commission based on data collected about the nature and use of such weapons. See United States v. Ray, 411 F.3d 900, 906 (8th Cir. 2005) ("Through § 2K2.1(a)(4)(B), the sentencing commission decided to punish more

severely the possession of semiautomatic firearms . . . ."). Indeed, the amendment of this guideline in 2006 shows that the Sentencing Commission was specifically concerned about the need to enhance a sentence if a defendant possessed a semiautomatic weapon that was capable of accepting a large capacity magazine.

Price's argument ignores the relative availability and ease of use of handguns as compared to the type of semiautomatic rifle that was found in his home. Handguns are compact and easy to conceal. See Michael B. de Leeuw et al., Ready, Aim, Fire? District of Columbia v. Heller and Communities of Color, 25 Harv. BlackLetter L.J. 133, 146 (2009). Research shows that "the high rate of handgun homicides in the United States is due, at least in part, to the high rate of handgun ownership in the United States." Id. at 149–50 (citation omitted). Handguns are not by nature "more dangerous" than semiautomatic weapons, but they are less visible and more widely available. The guideline enhancements for certain types of weapons are not based on the number of deaths that they cause each year but on their lethal capacity. See e.g., U.S.S.G. § 2K2.1(b)(3) (up to 15 level increase for offenses involving a portable rocket, missile, or launching device); U.S.S.G. § 2K2.4(a) (enhancement for fire or explosive materials used in the commission of a felony).

We have previously stated that semiautomatic weapons "are likely more dangerous than other kinds of weapons." Barron, 557 F.3d at 871 (citation omitted). The semiautomatic rifle that police found in Price's room would have allowed him to shoot 30 rounds of ammunition in rapid succession and immediately reload with another 30 rounds. These characteristics explain why assault weapons that can accept large capacity magazines have been referred to as "mass produced mayhem." Brian J. Siebel, Brady Center to Prevent Gun Violence, Assault Weapons "Mass Produced Mayhem" 1 (2008) (citation omitted). They can "unleash extraordinary firepower" and are built to shoot people quickly, efficiently, and accurately. Id. Given these characteristics it was certainly within the Sentencing Commission's discretion to recommend more severe punishment for convicted felons who possess weapons such

as the semiautomatic rifle found in Price's room.  We conclude that the district court did not err by applying U.S.S.G. § 2K2.1(a)(4)(B).

Since the district court committed no procedural error and imposed a reasonable sentence, we affirm its judgment.

_____