# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2021

Lyle W. Cayce
Clerk

No. 20-20042

United States of America,

*Plaintiff—Appellee*,

*versus*

Terrence Spriggs,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:19-CR-91-1

Before Dennis and Engelhardt, *Circuit Judges*, and Hicks*, *District Judge*.

Per Curiam:*

Terrence Spriggs pleaded guilty to unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(e), without a plea agreement, and was sentenced to a 108-month prison term followed by a two-

---

* Chief Judge of the Western District of Louisiana, sitting by designation.

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

year term of supervised release.  In determining his sentence, the district court made a base offense level determination of 20 under U.S.S.G. § 2K2.1(a)(4)(B), then applied a two-level enhancement based upon the involvement of three or more firearms under U.S.S.G. § 2K2.1(b)(1)(A) and a two-level enhancement based upon the involvement of a stolen firearm under U.S.S.G. § 2K2.1(b)(4).  Spriggs argues that the district court erred in scoring the possession of additional firearms as relevant conduct, pursuant to U.S.S.G. § 2K2.1.  We AFFIRM.

## I.

On January 7, 2018, police officers with the Houston Police Department (HPD) went to an apartment leased to Ashley Spriggs (Ashley), Defendant-Appellant's sister, to execute an arrest warrant for her in connection with fraudulent documents. Once there, officers knocked on the door and Defendant Terrence Spriggs (Spriggs) answered. Officers conducted a sweep of the apartment looking for Ashley and saw cash in plain view throughout the apartment and "large 'balls' of marijuana sitting on a table."

During the sweep, the police viewed a firearm under a couch cushion. Ashley was absent and, according to the officers, there was no evidence inside of the residence indicating a female resided in the apartment.  There were, however, pictures of Spriggs and his children around the apartment, as well as men's clothing, toiletries, and shoes.  One of the bedrooms appeared to be furnished for a child.  When asked for permission to search the apartment, Spriggs declined and advised the officers that the apartment belonged to his sister.

After officers saw drug paraphernalia (plastic bags, spoons, and baggies with white powder residue), they detained Spriggs while they obtained a search warrant for the apartment. The sweep and the warrant

search together resulted in the seizure of the following: a model SDP Sphinx 9mm handgun; a 9mm magazine; a model DMPS AR-15 .223 caliber rifle; a Model RFS-15 Radical Firearms .223 caliber rifle; a magazine with 36 rounds of .223 caliber ammunition; a model LC9 Ruger 9mm caliber handgun; 18 rounds of 9mm caliber ammunition; a 9mm Ruger magazine; a Glock 21 .45 caliber handgun with mounted light; a 9mm Glock magazine; an extended 9mm magazine; 71 rounds of .45 caliber ammunition; 9.91 grams of cocaine; scales; 5.39 grams of marijuana; 3.41 grams of acetaminophen and hydrocodone; 1.63 grams of Xanax; 2.36 grams of ciprofloxacin hydrochloride; 0.42 grams of heroin; $54,837.00 in cash; a necklace with a "2600" pendant; a ring; two Rolex watches; and eight cell phones. The police also "located a photograph of [Spriggs] holding a handgun similar to the [seized] 9mm Ruger."

Officers believed that Spriggs sold narcotics, based upon amounts of drugs individually wrapped in small packages and cash in mixed denominations. Police found $2,600 in cash in Spriggs's pocket, but the rest of the cash was in dresser drawers and in stacks throughout the apartment. To explain the cash, Spriggs told officers he worked as a stripper at a Houston club, which the officers later discovered was no longer in business at the time. Five firearms were recovered during the search, including one capable of holding a high-capacity magazine, and one firearm that was subsequently determined to be stolen. Spriggs was arrested that same day, and was later given a bond in Harris County, Texas. While still on bond, Spriggs beat his then-girlfriend and damaged her car, picking up two additional offenses: assault of a family member and criminal mischief.

On August 26, 2018, HPD officers executed another search warrant at a different apartment, based upon information that Spriggs and others were involved in a fraud scheme. The apartment was the home of Spriggs's girlfriend, Tadyra Lewis, who was suspected of credit card fraud. When

No. 20-20042

officers arrived, they found Spriggs asleep in the master bedroom, three handguns inside the master bedroom closet on top of a small safe, and crack cocaine in plain view in the master bedroom. Spriggs was arrested again and taken to Harris County Jail, where he was uncooperative with law enforcement and threatened to kill one of the officers.

Prior to the January 2018 and August 2018 searches, Spriggs had been convicted of a felony crime punishable by imprisonment for more than one year, and was thus prohibited from possessing a firearm and knew he was prohibited from possessing a firearm as a felon. On February 6, 2019, a grand jury sitting in the Southern District of Texas returned a one-count indictment, charging Spriggs with the offense of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment alleged that on or about January 7, 2018, Spriggs possessed a "Ruger, model LC9, 9mm caliber Luger, semi-auto pistol."

At the detention and arraignment hearing on February 19, 2019, the court heard testimony from HPD Detective Paul Lowry, who also serves as a Task Force Officer with U.S. Homeland Security. He confirmed that two of the firearms seized in the January 2018 raid had been determined to be stolen, and further opined on the August 26, 2018 raid. The court denied bail and ordered Spriggs detained pending trial, citing the threat to the community, specifically the threat against the officer's life.

The presentence investigative report (PSR) established a base offense level of 20, pursuant to U.S.S.G. §2K2.1(a)(4)(B). The PSR recommended a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(1) because the offense involved a total of eight firearms seized in the January 2018 and August 2018 searches, under the principles of relevant conduct; a two-level increase pursuant to U.S.S.G. § 2K2.1(b)(4) because (at least) one of the firearms had been stolen; and a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6) for

No. 20-20042

using or possessing the firearm in connection with another felony. After three levels were deducted for acceptance of responsibility, Spriggs had a total offense level of 27.

The PSR placed Spriggs in criminal history category V, yielding a guideline sentencing range of 100 to 120 months. Spriggs filed objections to the four-level enhancement under U.S.S.G. § 2K2.1(b)(1)(B) for possession of 8 to 24 firearms, arguing he was not the sole occupant of his sister's apartment that was searched on January 7, 2018.

On October 17, 2019, Spriggs entered a guilty plea, absent a plea agreement, to the charged offense. Spriggs agreed with the factual basis but declined to acknowledge that he had possessed any firearm other than the Ruger 9mm pistol charged in the indictment. The district court adopted the PSR in its entirety and sentenced Spriggs to a 108-month prison term and a two-year term of supervised release. Spriggs timely appealed.

II.

Spriggs argues that the district court erred in scoring the possession of additional firearms as relevant conduct, pursuant to U.S.S.G. § 2K2.1, because the firearms were hidden inside an apartment, the apartment was leased to another person, and the Government failed to establish that he was the apartment's sole occupant. Although framed as one issue, Spriggs's appellate challenge concerns three matters, namely: (1) the base offense level determination of 20 under U.S.S.G. § 2K2.1(a)(4)(B), (2) the two-level enhancement based upon the involvement of three or more firearms under U.S.S.G. § 2K2.1(b)(1)(A), and (3) the two-level enhancement based upon the involvement of a stolen firearm under U.S.S.G. § 2K2.1(b)(4).

Spriggs's claims that the district court erred in applying the Sentencing Guidelines are claims of procedural error. *See Gall v. United States*, 552 U.S. 38, 51 (2007). This court reviews the district court's

application of the Guidelines *de novo* and reviews the district court's factual findings for clear error. *United States v. Hagman*, 740 F.3d 1044, 1047-48 (5th Cir. 2014). "A district court may consider non-adjudicated offenses (offenses for which the defendant has neither been charged nor convicted) . . . provided they constitute 'relevant conduct' under U.S.S.G. § 1B1.3." *United States v. Brummett*, 355 F.3d 343, 344 (5th Cir. 2003). A district court's determination of what constitutes relevant conduct is a factual finding. *Id.* at 1048. A factual finding plausible in light of the record as a whole is not clearly erroneous. *Id.* On the other hand, a factual finding is clearly erroneous when, after reviewing the entire record, the court is "left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citation omitted). "The Government must prove sentencing enhancements by a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

## III.

In order to convict a defendant as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt that the defendant: (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm. *United States v. Anderson*, 559 F.3d 348, 353 (5th Cir. 2009) (citing *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995)). Possession can be established by: (1) actual, physical possession of the firearm, (2) sole control and occupancy of a place where a firearm is found, or (3) joint occupancy of a place where a firearm is found, combined with some evidence of the defendant's access to and knowledge of the firearm. *Anderson*, 559 F.3d at 353. Spriggs argues none of the additional firearms, beyond the one firearm he accepted responsibility for in his guilty plea, were in his actual possession.

### i. Constructive Possession

Possession of a firearm may be actual or constructive, and may be proven by circumstantial evidence. *United States v. Fields*, 977 F.3d 358, 365 (5th Cir. 2020) (citing *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020)). The district court did not specify a possessory basis—*i.e.*, actual or constructive—for holding Spriggs to account for the additional firearms. There is no evidence of Spriggs's actual possession of the firearms, so the Government must rely on a theory of constructive possession. "In general, a person has constructive possession if he knowingly has ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located." *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). Typically, "the issue of constructive possession is raised . . . where a defendant is found to be in the vicinity of a firearm but not in actual possession of it; a firearm is found in his residence . . . or . . . in some other place over which the defendant has dominion or control." *Hagman*, 740 F.3d at 1049–50.

This court will affirm a finding of constructive possession in cases of joint occupancy "only when there is some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the illegal item." *Huntsberry*, 956 F.3d at 280. A defendant's mere presence in the area of an object is not sufficient to establish possession. *See United States v. Green,* 873 F.3d 846, 852–53 (11th Cir. 2017) (analyzing whether the evidence was sufficient to establish that the defendant possessed a firearm as a convicted felon in violation of § 922(g)). A defendant's connection to the location where a gun is found, however, may be relevant to whether he had knowledge of the gun or the ability and intent to exercise control or dominion over it. *See id*. at 853. "Constructive possession cannot be proven by proximity alone; there must be 'other proof' linking the defendant to the

prohibited item." *United States v. Foster*, 891 F.3d 93, 111 (3rd Cir. 2018) (citations omitted).

Spriggs argues that the Government provided insufficient evidence to support constructive possession. In support, he cites *United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993), where this court held a defendant was not in possession of a firearm because there was no circumstantial evidence establishing that felon knew of the weapon. "Although a defendant's exclusive occupancy of a place may establish his dominion and control over any item found there, his joint occupancy of a place cannot, by itself, support the same conclusion." *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004) (citing *United States v. Hinojosa*, 349 F.3d 200, 203-04 (5th Cir. 2003)). Some circumstantial proof of possession is required besides mere joint occupancy before constructive possession can be established. *Fields*, 977 F.3d at 365.

In the present case, the Government has evidence to support Spriggs's possession of the apartment. With the exception of the number of firearms, Spriggs agreed that the factual basis cited by the Government was correct.

As noted above, when HPD officers searched Spriggs and the apartment, they found cash, drugs, and guns. They found no evidence of a woman residing in the apartment. During sentencing, the district court stated the preponderance of the evidence standard of factual findings for purposes of sentencing. The district court declined to accept Spriggs's "joint occupancy" argument, stating that the Government had "offered some evidence that [Spriggs] was a resident of the apartment. He may or may not have been on the lease. But based upon what the [G]overnment's attorney has outlined, he was occupying the apartment with his children."

### ii. Reliable Evidence

In addition to the drugs and money discovered with the guns, pictures of Spriggs and his children were displayed throughout the apartment. Law enforcement found a photograph of Spriggs holding a handgun similar to the Ruger 9mm, model LC9, that they seized during the January 2018 search and named in the indictment. Officers also seized Spriggs's cell phones on January 7, 2018, and downloaded their contents under the authority of a search warrant.

Photographs downloaded from Spriggs's cell phones were attached as exhibits to the United States' Objections to the PSR, which was filed before the sentencing hearing. One of the photos came from a post to Spriggs's Instagram account, where he carries a firearm that matched the Ruger 9mm model LC9 pistol named in the indictment. The Government contends the other photographs are of firearms "consistent with," or that bear "similarity" to, the four additional seized firearms used for enhancement purposes and establish that Spriggs at some time handled firearms like or even identical to the other four.

Other photographs retrieved from his cell phones showed Spriggs and his children inside his sister's apartment handling cash. The pictures match the interior of Ashley's apartment and display the appearance of the cash that matched how officers found it during the search: in bags and stacks throughout the apartment, supporting the Government's assertion that Spriggs was living at the apartment with his children.

### iii. Knowledge

Spriggs correctly states that, in joint-occupancy cases, the Government must prove that a defendant had more than "mere control or dominion over the place" where contraband is found. *Mergerson*, 4 F.3d at 349. Indeed, "something else (e.g., some circumstantial indicium of

No. 20-20042

possession) is required besides mere joint occupancy before constructive possession is established." *Id.* Evidence of knowledge and intent is critical in constructive-possession cases, as "[a] defendant will often deny any knowledge of a thing found in an area that is placed under his control." *United States v. Williams*, 620 F.3d 483, 489 (5th Cir. 2010). But no affirmative link between the defendant and the weapon has to be established. *Mergerson*, 4 F.3d at 349.

In joint-occupancy cases, this court takes "a commonsense, fact-specific approach" to determining whether constructive possession has been established. *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012). In that regard, this court has held that "[d]ominion or control over the premises may be shown by the presence of the defendant's personal belongings . . . or by evidence that the defendant [may] come and go as he please[s]." *Id.* at 419-20. (internal quotation marks and citation omitted).

The Government contends that Spriggs had exclusive possession of the apartment and "consistently occup[ied] the space" in which the firearms were found. In support, it cites officers' observations of men's and children's items, and pictures of Spriggs and his children. Spriggs argues the photos and clothing observed in the apartment was not unusual for family members.

Exclusive control over the premises allows the court to infer the knowledge and intent to control objects within those premises. *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012); *see also United States v. Little*, 829 F.3d 1177, 1183 (10th Cir. 2016) ("It would not be improper for the jury to infer that the defendant had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom"); *United States v. Finney*, 28 F.3d 113 (10th Cir. 1994) (holding that there was sufficient evidence of defendant's knowledge of the firearm in

jointly occupied bedroom because defendant "rented the house, occupied the bedroom, and used the house as a base of operations for drug trafficking"). Accordingly, the district court did not err in finding that the Government produced sufficient evidence that Spriggs had knowledge of and constructively possessed the firearms and ammunition seized in the January 2018 search.

IV.

In calculating Spriggs's offense level under U.S.S.G. § 2K2.13, the district court included four additional firearms seized in the January 2018 search in the total number of firearms involved in Spriggs's possession offense, concluding that Spriggs had, at that location, possessed a total of five firearms. Spriggs argues that the district court improperly enhanced his sentence because he was only charged with and pleaded guilty to possession of one firearm.

### *i. Base Offense Level Determination and Relevant Conduct*

A base offense level of 14 is prescribed if the defendant "was a prohibited person at the time of the offense." U.S.S.G. § 2K2.1(a)(6)(A). It is undisputed that Spriggs was a felon prohibited from possessing a firearm in January 2018. Guidelines section 2K2.1(a)(4)(B) recommends a base offense level of 20 if the offense involved certain dangerous weapons and the defendant has been convicted of certain felonies or is otherwise prohibited from possessing such weapons. This Guidelines section was originally adopted in 1995, and then was amended in 2006 to recommend a base level of 20 for offenses that involved a "semiautomatic firearm that is capable of accepting a large-capacity magazine" and the defendant "was a prohibited person at the time the defendant committed the instant offense." *See United States v. Price*, 649 F.3d 857, 870 (8th Cir. 2011) (providing history of the Guidelines and its amendments).

11

No. 20-20042

The Guidelines use relevant offense conduct, if there is any, to assess offense levels. *See* U.S.S.G. § 1B1.3(a)(1)(A) (noting that application of the Guidelines calls for consideration of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"); *Brummett*, 355 F.3d at 343 (a district court may consider non-adjudicated offenses as relevant conduct under § 1B1.3 of the Guidelines). Unless otherwise specified, a convicted defendant's guideline range is determined based upon all relevant conduct. U.S.S.G. § 1B1.1, comment. (n.1(H)).

Guidelines commentary explains that under subsection (a)(1) "the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range," not "on whether the defendant is criminally liable for an offense." U.S.S.G. § 1B1.3, comment. (n.1). Thus, in a firearms case, relevant conduct may include uncharged firearms if the Government establishes that the defendant possessed the additional firearms. *See, e.g., Houston*, 364 F.3d at 248. As examined above, the Government has demonstrated that Spriggs constructively possessed the four additional firearms seized in the January 2018 raid.

Generally, a PSR and its addenda bear sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (quotation and citation omitted). Here, the PSR shows that Spriggs occupied the apartment and had constructive possession of the Model RFS-15 Radical Firearms, LLC .223 caliber rifle, with a loaded 36-round magazine of .223 caliber ammunition. When HPD executed the search warrant, Spriggs was in the apartment alone.

12

Even without considering the photographs of Spriggs and the children found in the apartment, the record supports that Spriggs, at a minimum, had joint dominion and control over the apartment. *See Meza*, 701 F.3d at 419. The PSR stated that the apartment leased by Ashley was in fact "occupied by [Spriggs], as evidenced by . . . the pictures inside . . . of [Spriggs] and his children, men's clothing and toiletries, and a bedroom that was furnished for a child." In sum, the district court did not clearly err in concluding that Spriggs constructively possessed a firearm capable of accepting a large-capacity magazine. The district court properly assigned Spriggs a base offense level of 20 for possessing a firearm capable of accepting a large-capacity magazine.

### *ii. Three or More Firearms*

The Sentencing Guidelines advise, for a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), a two-level enhancement if the offense involved three to seven firearms. *See* U.S.S.G § 2K2.1(b)(1)(A). When determining how many firearms are involved in an offense, the district court should include all "firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed[.]" U.S.S.G § 2K2.1, comment. (n.5).

In *United States v. Brummett*, 355 F.3d at 344-45, this court determined that the district court did not err in calculating a defendant's offense level for the offense of being a felon in possession of a firearm where it had counted firearms the defendant had not been indicted for possessing. The district court included firearms that had been discovered in the nine months following the possession for which the defendant was indicted as relevant conduct in its calculation of his sentence. *Id*. at 344. This court held that, despite the amount of time that had elapsed between the offenses, they were part of the same ongoing series of offenses and thus were relevant conduct. *Id*. at 345.

In the present case, the Ruger 9mm pistol discovered in the couch cushion shortly before the four other firearms during the January 2018 search was found to be relevant conduct by the district court. Specifically, the court determined that the additional firearms discovered in the January 2018 search were relevant, but excluded the firearms discovered during the August 2018 search, adjusting the calculation from a four-point enhancement to a two-point enhancement (reducing the total number of firearms seized in January and August 2018 from eight to five). The district court did not err applying a two-level enhancement under U.S.S.G § 2K2.1(b)(1)(A) because the offense involved five firearms: one specifically charged in the indictment and four others discovered in the January 2018 search.

### iii. Stolen Firearm

Spriggs's third assignment of error is that the district court improperly enhanced his sentence two levels under § 2K2.1(b)(4) of the Guidelines based upon the involvement of a stolen firearm. Section 2K2.1(b)(4) applies "whenever a stolen firearm is involved in the offense of conviction or in relevant conduct." *United States v. Cole*, 525 F.3d 656, 660 (8th Cir. 2008). The district court need only find facts relevant to its application of the Sentencing Guidelines by a preponderance of the evidence. *United States v. Lewis*, 476 F.3d 369, 389 (5th Cir. 2007).

An enhancement involving a stolen firearm applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen." *United States v. Perez*, 585 F.3d 880, 883 (5th Cir. 2009). This court has continually enforced the clear and unambiguous language of § 2K2.1(b)(4) and its strict liability standard. *See United States v. Singleton*, 946 F.2d 23, 24 (5th Cir. 1991); *United States v. Fry*, 51 F.3d 543, 546 (5th Cir. 1995); *United States v. Hodges*, 190 F.3d 537 (5th Cir. 1999); *United States*

No. 20-20042

*v. Leon–Gonzalez*, 220 F.3d 586 (5th Cir. 2000); *United States v. Williams*, 365 F.3d 399, 407–08 (5th Cir. 2004).

The record supports the finding that at least one firearm discovered in the January 2018 raid was stolen. According to the testimony of Detective Lowry at the detention and arraignment hearing on February 19, 2019, traces were performed on the firearms seized, which confirmed that two of the five guns were stolen. The PSR went into further detail about one of the firearms, specifically: "[d]uring the course of the investigation, officers confirmed that the Glock 21 handgun had been reported stolen out of League City, Texas." The district court did not err applying a two-point enhancement during sentencing for the possession of a stolen firearm.

V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

15